DAVID ROYER GEITNER, AN INCOMPETENT, BY AND THROUGH HIS GUARDIAN, FIRST NATIONAL BANK OF CATAWBA COUNTY v. MARCIA TOWN-SEND, ALSO KNOWN AS MARCIA TOWNSEND GEITNER AND DAVID ROYER GEITNER, BY AND THROUGH HIS GUARDIAN, ROGER MANUS

No. 8325DC98

(Filed 6 March 1984)

**1. Marriage § 4— marriage by incompetent as voidable—failure to direct verdict for plaintiff proper**

In an annulment action instituted by plaintiff bank purporting to act on behalf of its ward against his wife, the trial court properly denied plaintiff's motions for a directed verdict, judgment notwithstanding the verdict, and a new trial since a marriage of a person incapable of contracting for want of understanding is not void, but voidable, and prior adjudication of incompetency is not conclusive on the issue of later capacity to marry and does not bar a party from entering a contract to marry. G.S. 51-3 and G.S. 50-4. Therefore, where there was conflicting evidence as to whether plaintiff's ward did have adequate mental capacity and understanding of the special nature of a contract to marry, there was sufficient evidence presented to support a jury's verdict in favor of defendant.

**2. Marriage § 5— burden of proof that husband lacked mental capacity upon plaintiff**

In an annulment action initiated by plaintiff bank purporting to act on behalf of its ward, the trial judge properly placed the burden of proof on plaintiff to prove that its ward lacked the mental capacity and understanding sufficient to contract a valid marriage since when the fact of marriage has been established by evidence, "the burden of persuasion on the issue of invalidity is on the party asserting such."

APPEAL by plaintiff from *Noble, Judge.* Judgment entered 23 March 1982 in District Court, CATAWBA County. Heard in the Court of Appeals 10 January 1984.

This is an annulment action initiated by plaintiff, First National Bank of Catawba County, purporting to act on behalf of its ward, David Royer Geitner, against Marcia Townsend Geitner, to have declared void *ab initio* the marriage between David Royer Geitner and Marcia Townsend Geitner which took place on 29 May 1980.

David Royer Geitner is 49 years old and is an adjudicated incompetent with a long history of mental illness. Mr. Geitner has been diagnosed as a chronic paranoid schizophrenic and has re-

ceived extensive psychiatric treatment. Mr. Geitner has been a patient at various mental institutions for much of his adult life.

In May of 1961, First National Bank of Catawba County filed an Application for Guardianship of Mr. Geitner's estate, listing the total value of that estate as $45,000.00. On 19 May 1961, Letters of Guardianship, appointing First National Bank of Catawba County as Guardian, were issued by the Clerk of Superior Court of Catawba County. Since that time, Mr. Geitner has inherited approximately $900,000.00 from his father, which became part of the estate managed by the guardian bank.

In June of 1975, Mr. Geitner was conditionally released from confinement at Broughton Hospital at Morganton, North Carolina, pursuant to a judicial finding that he was not imminently dangerous to himself or others. The conditions of his release, as recommended by his physician and the court, included provision for a structured environment with attendants to do his cooking, cleaning, driving, etc. Mr. Geitner has lived in that environment in a house purchased by the guardian bank with funds from his estate and has continued to receive psychiatric treatment since his release from Broughton Hospital in 1975.

Mr. Geitner met Marcia Townsend in April of 1980 at the Carolina Friendship House, an outpatient mental health facility in Boone, North Carolina. Marcia Townsend suffers from no mental disability but is confined to a wheelchair as a victim of Friedreich's ataxia, a disease of the nervous system resulting in the loss of muscular coordination and control. She attended Friendship House to take cooking lessons. The couple found themselves attracted to each other and spent a great deal of time together. On 28 May 1980, Mr. Geitner proposed to Marcia Townsend. She accepted the next day. Mr. Geitner arranged transportation to Watauga Hospital where the couple had blood tests and physical examinations. They then went to the Register of Deeds Office to obtain a marriage license. They were married that day, 29 May 1980, at the magistrate's office.

Since their marriage, David Royer Geitner and Marcia Townsend Geitner have continued to live together in the house purchased by the guardian bank for Mr. Geitner, with certain domestic duties being provided by an attendant employed by the guardian bank. The guardian bank has refused to provide any

funds for the benefit of Marcia Townsend Geitner and, in fact, reduced David Royer Geitner's allowance from $160.00 per week to $50.00 per week in May of 1980.

This annulment action was initiated by the guardian bank on 23 October 1980. At that time, David Royer Geitner's only surviving relatives were an elderly aunt and several cousins, among whom were the chairman of the board and the wife of a member of the trust committee of the bank.

Upon Mr. Geitner's application, a guardian ad litem was appointed on 28 May 1981 to represent Mr. Geitner's interests. Mr. Geitner, through his guardian ad litem, was permitted to intervene in this action as a party defendant. The case came on for trial, and on 22 March 1982, a jury returned a verdict finding that David Royer Geitner had sufficient mental capacity and understanding on 29 May 1980 to enter into a marriage contract with Marcia Townsend Geitner. Judgment was entered accordingly. Plaintiff appeals.

*Sigmon, Clark and Mackie, by E. Fielding Clark, II, for plaintiff-appellant.*

*Legal Services of the Blue Ridge, by Bruce L. Kaplan, for Marcia T. Geitner, defendant-appellee.*

*Goldsmith & Goldsmith, by C. Frank Goldsmith, Jr., for David R. Geitner, intervenor-appellee.*

EAGLES, Judge.

[1] Plaintiff guardian bank asks us to find that the trial judge erred in denying its motions for directed verdict, judgment notwithstanding the verdict, and a new trial. Plaintiff contends that a marriage with a legally declared incompetent is void as a matter of law. We do not agree.

A voidable marriage is valid "for all civil purposes until annulled by a competent tribunal in a direct proceeding, but a void marriage is a nullity and may be impeached at any time." *Ivery v. Ivery,* 258 N.C. 721, 726, 129 S.E. 2d 457, 461 (1963). Our Supreme Court has held that, under the common law as modified by G.S. 51-3 and G.S. 50-4, a marriage of a person incapable of contracting for want of understanding is not void, but voidable. *Id.* at 730, 129

S.E. 2d at 463. We find that prior adjudication of incompetency is not conclusive on the issue of later capacity to marry and does not bar a party from entering a contract to marry.

The mental capacity of a party at the precise time when the marriage is celebrated controls its validity or invalidity. 1 Lee, North Carolina Family Law § 24 (4th ed. 1979). As to what constitutes mental capacity or incapacity to enter into a contract to marry, "the general rule is that the test is the capacity of the person to understand the special nature of the contract of marriage, and the duties and responsibilities which it entails, which is to be determined from the facts and circumstances of each case." *Ivery*, 258 N.C. at 732, 129 S.E. 2d at 464-65 (quoting 55 C.J.S. *Marriage* § 12). In Lee's treatise on North Carolina family law, it is noted that "unlike other transactions, an insane person's capacity to marry is not necessarily affected by guardianship. . . . (R)easons why guardianship removes from the insane person all capacity to contract do not apply to marriage." 1 Lee, *supra*, § 24 n. 119 (quoting McCurdy, *Insanity as a Ground for Annulment or Divorce in English or American Law*, 29 Va. L. Rev. 77 (1943) ). In fact, "tests judicially applied for a determination of incompetency in guardianship matters differ markedly from those applied for the determination of mental capacity to contract a marriage, for even though under guardianship as an incompetent, a person may have in fact sufficient mental capacity to validly contract marriage." 4 Am. Jur. 2d ANNULMENT OF MARRIAGE § 28.

We find that, here, sufficient evidence was presented to support a jury's verdict. Defendants presented both expert and lay witnesses who testified that Mr. Geitner did have, on 29 May 1980, adequate mental capacity and understanding of the special nature of a contract to marry. The fact that plaintiff guardian bank offered conflicting evidence merely required the jury to consider the credibility of the witnesses and evidence on each side. The fact that there was conflicting evidence does not require a directed verdict, judgment notwithstanding the verdict, or a new trial.

[2]  Plaintiff guardian bank also assigns as error the trial judge's charge to the jury that the burden of proof was on the plaintiff to prove that David Royer Geitner lacked the mental capacity and understanding sufficient to contract a valid marriage. We find no

error. When the fact of marriage has been established by evidence, "the burden of persuasion on the issue of invalidity is on the party asserting such." 2 Brandis, N.C. Evidence § 244 (2d rev. ed. 1982). And even if a party's insanity is proved to be of such a chronic nature that it is presumed to continue, it does not shift the burden of the issue. 2 Brandis, N.C. Evidence § 238 (2d rev. ed. 1982). The plaintiff had the burden of proof on Mr. Geitner's capacity to contract a valid marriage.

The rest of plaintiff's assignments of error concern the admissibility of certain evidence. Several of these assignments of error concern testimony to the effect that Mr. Geitner had the capability to understand the nature of marriage. We note that both expert and lay witnesses may testify as to mental capacity or condition under an exception to the rule that a witness may not give an opinion on the very question for the jury to decide. 1 Brandis, N.C. Evidence § 126 (2d rev. ed. 1982). We hold that since the testimony complained of by plaintiff was based on the witnesses' observations and reasonable opportunities to form opinions as to Mr. Geitner's mental condition, there was no error in admitting this testimony. We have carefully examined the remaining assignments of error and find them to be without merit.

No error.

Judges HEDRICK and BRASWELL concur.