CARL GLENN PICKARD, JR., Plaintiff v. JANE EDWARDS PICKARD, Defendant

No. COA05-426

(Filed 21 February 2006)

**1. Pleadings— amendment of answer—res judicata and estoppel added—no prejudice**

The trial court did not abuse its discretion by permitting defendant to amend her answer to a marriage annulment action to include the defenses of estoppel, collateral estoppel, and res judicata. Allowance of the amendment did not prejudice plaintiff's ability to present evidence related to the additional defenses.

**2. Marriage— annulment—judicial estoppel**

The trial court correctly concluded that judicial estoppel applies and correctly refused to annul a marriage performed by a Cherokee shaman who was also an ordained minister in the Universal Life Church, even though the marriage was not properly solemnized pursuant to statute. The court had accepted plaintiff's assertion that he was married to defendant when he adopted defendant's daughter, and plaintiff's inconsistent position would impose an unfair detriment on defendant.

Judge Tyson dissenting.

Appeal by plaintiff from judgment entered 27 September 2004 by Judge Mark E. Galloway in the District Court in Caswell County. Heard in the Court of Appeals 17 November 2005.

*Hatch, Little & Bunn, L.L.P., by Elizabeth T. Martin, for plaintiff-appellant.*

*Walker & Bullard, P.A., by Daniel S. Bullard and James F. Walker, for defendant-appellee.*

HUDSON, Judge.

Carl Glenn Pickard ("plaintiff") appeals from the trial court's order denying the annulment of his marriage to Jane Edwards Pickard ("defendant"). As discussed below, we affirm.

Hawk Littlejohn ("Littlejohn"), a Cherokee Indian, married plaintiff and defendant in the Native American tradition on 7 June 1991.

PICKARD v. PICKARD

[176 N.C. App. 193 (2006)]

Plaintiff is a physician employed by the University of North Carolina at Chapel Hill ("UNC"). Plaintiff had met Littlejohn at the UNC medical school where Littlejohn lectured as a Cherokee shaman or "medicine man." Littlejohn performed healings and conducted ceremonies in accordance with Cherokee traditions. Littlejohn also possessed a certificate stating that he was ordained as a minister in the Universal Life Church.

Defendant initially desired to be married in a traditional Christian ceremony. Plaintiff persuaded defendant to be married in the Cherokee tradition with Littlejohn performing the ceremony. When Littlejohn performed the wedding ceremony, both the parties believed the ceremony was legally sufficient to bind plaintiff and defendant as husband and wife. Littlejohn conducted the parties' ceremony in accordance with the Cherokee marriage tradition. The parties received a North Carolina license and certificate of marriage on 3 December 2002, which was filed in the Caswell County Register of Deeds office.

After the ceremony, and for the next eleven years, the parties lived together and conducted themselves as husband and wife. In 1998, plaintiff initiated proceedings to adopt defendant's adult biological daughter. In his amended petition for adult adoption, and as a requisite of the adoption, plaintiff provided a sworn statement that he was "the stepfather of the adoptee, having married her natural mother." Plaintiff also listed his marital status as "married." The clerk of superior court in Caswell County filed an amended decree of adoption on 9 November 1998, based on plaintiff's assertions.

On 9 April 2002, the parties separated. On 23 April 2002, plaintiff filed a complaint for annulment of his eleven-year marriage to defendant. On 23 May 2002, defendant answered and denied that plaintiff was entitled to an annulment. After plaintiff presented his evidence, defendant moved for a directed verdict. Counsel for both parties argued and briefed defenses of collateral estoppel and res judicata. On 3 February 2003, the court informed the parties through correspondence that defendant's motion for directed verdict was denied.

On 28 May 2003, defendant filed a motion to amend the pleadings alleging the defenses of collateral estoppel and res judicata. A delay occurred due to the illness of the presiding judge. On 7 May 2004, defendant presented evidence. At the conclusion of defendant's evidence, defendant's motion for a directed verdict was denied.

On 27 September 2004, the trial court filed a judgment concluding that the marriage ceremony was not properly solemnized because Littlejohn was not qualified to perform a marriage ceremony. The court denied plaintiff's claim for annulment because plaintiff had asserted under oath, judicially admitted and proved his marriage to defendant in the adoption proceeding. Plaintiff appeals. Defendant argues cross assignments of error.

**[1]** Plaintiff first argues that the trial court erred in allowing defendant's motion to amend her answer to include the defenses of estoppel, collateral estoppel and *res judicata*. We disagree.

"The trial court's decision regarding a party's motion to amend the pleadings will not be disturbed on appeal unless an abuse of discretion is shown." *Stetser v. TAP Pharm. Prods., Inc.*, 165 N.C. App. 1, 30, 598 S.E.2d 570, 589 (2004). After the filing of a responsive pleading, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." N.C. Gen. Stat. § 1A-1, Rule 15(a) (2003). "Rule 15(a) contemplates liberal amendments to the pleadings, which should always be allowed unless some material prejudice is demonstrated." *Stetser*, 165 N.C. App. at 31, 598 S.E.2d at 590. "Some of the reasons for denying a motion to amend include undue delay by the moving party, unfair prejudice to the nonmoving party, bad faith, futility of the amendment, and repeated failure to cure defects by previous amendments." *Id.* "The objecting party has the burden of satisfying the trial court that he would be prejudiced by the granting or denial of a motion to amend." *Watson v. Watson*, 49 N.C. App. 58, 60, 270 S.E.2d 542, 544 (1980).

Here, the court's allowance of the amendment did not prejudice plaintiff's ability to present evidence related to the additional defenses. The court deferred its ruling on amendment until it had heard evidence on estoppel, and permitted both parties to submit briefs if they desired. Plaintiff never argued at trial that he was prejudiced in his ability to present evidence on these issues; he merely contended that the issues could not be considered because they had not been included in the original answer. We conclude that the court did not abuse its discretion in permitting amendment of defendant's answer.

**[2]** Plaintiff argues that the trial court erred when it denied the annulment. We do not agree.

A party to a marriage may seek an annulment in accordance with N.C. Gen. Stat. § 50-4 (2003). The statute provides:

The district court, during a session of court, on application made as by law provided, by either party to a marriage contracted contrary to the prohibitions contained in the Chapter entitled Marriage, or declared void by said Chapter, may declare such marriage void from the beginning, subject, nevertheless, to G.S. 51-3.

N.C. Gen. Stat. § 50-4 (2003). This Court stated in *Geitner v. Townsend*, "[a] voidable marriage is valid for all civil purposes until annulled by a competent tribunal in a direct proceeding, but a void marriage is a nullity and may be impeached at any time." 67 N.C. App. 159, 161, 312 S.E.2d 236, 238, *disc. review denied*, 310 N.C. 744, 315 S.E.2d 702 (1984). N.C. Gen. Stat. § 51-1 (1977) was the statute in effect that governed marriage ceremonies when plaintiff and defendant were married. The statute required the parties to "express their solemn intent to marry in the presence of (1) an ordained minister of any religious denomination, or (2) a minister authorized by his church or (3) a magistrate." *State v. Lynch*, 301 N.C. 479, 487, 272 S.E.2d 349, 354 (1980) (internal quotation marks omitted).

Our Supreme Court has stated: "[u]pon proof that a marriage ceremony took place, it will be presumed that it was legally performed and resulted in a valid marriage." *Kearney v. Thomas*, 225 N.C. 156, 163, 33 S.E.2d 871, 876 (1945). The burden of proof rests upon plaintiff to prove by the greater weight of the evidence grounds to void or annul the marriage to overcome the presumption of a valid marriage. *Townsend*, 67 N.C. App. at 163, 312 S.E.2d at 239.

We begin by noting that the dissent states that Littlejohn was an ordained minister. However, although the trial court found that Littlejohn possessed a certificate stating that he was ordained by the Universal Life Church, "[t]hat at no time was Hawk Littlejohn a minister of the gospel licensed to perform marriages." The court also found and concluded that Littlejohn's ordination was not cured by N.C. Gen. Stat. § 50-1.1. Because these findings have not been challenged, they are conclusive on appeal. *Rite Color Chemical Co. v. Velvet Textile Co.*, 105 N.C. App. 14, 22, 411 S.E.2d 645, 650 (1992).

"The well-established rule is that findings of fact by the trial court supported by competent evidence are binding on the appellate courts even if the evidence would support a contrary finding." *Scott v. Scott*, 336 N.C. 284, 291, 442 S.E.2d 493, 497 (1994) (citing *In re Estate of Trogdon*, 330 N.C. 143, 147, 409 S.E.2d 897, 900 (1991)). "As to findings in a bench trial, we review matters of law de novo." *State Farm*

*Fire & Cas. Co. v. Darsie,* 161 N.C. App. 542, 548-49, 589 S.E.2d 391, 397 (2003), *disc. review denied,* 358 N.C. 241, 594 S.E.2d 194 (2004) (citing *Graham v. Martin,* 149 N.C. App. 831, 561 S.E.2d 583 (2002)), *disc. rev. denied,* 358 N.C. 241, 594 S.E.2d 194 (2004).

In its judgment, the trial court concluded as law that although the parties' marriage was not properly solemnized pursuant to statute, plaintiff was estopped from obtaining an annulment on several grounds, including judicial estoppel, quasi-estoppel, collateral estoppel and *res judicata.* As discussed below, we conclude that judicial estoppel applies here and affirm the trial court's judgment on that basis.

"[J]udicial estoppel seeks to protect courts, not litigants, from individuals who would play 'fast and loose' with the judicial system." *Whitacre P'ship v. BioSignia, Inc.,* 358 N.C. 1, 26, 591 S.E.2d 870, 887 (2004). In addition, "because of its inherent flexibility as a discretionary equitable doctrine, judicial estoppel plays an important role as a gap-filler, providing courts with a means to protect the integrity of judicial proceedings where doctrines designed to protect litigants might not adequately serve that role." *Id.* In adopting the framework of the United States Supreme Court as stated in *New Hampshire v. Maine,* 532 U.S. 742, 149 L. Ed. 2d 968 (2001), the North Carolina Supreme Court has set forth three factors to be considered in applying judicial estoppel:

> First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding might pose a threat to judicial integrity by leading to inconsistent court determinations or the perception that either the first or the second court was misled. Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 29, 591 S.E.2d at 888-89 (internal quotation marks and citations omitted). Here, plaintiff takes the position that his marriage is voidable, a position clearly inconsistent with his sworn statements in the adoption proceedings. The court initially accepted plaintiff's earlier assertion that he was married to defendant in permitting his adoption of defendant's daughter. Although the second adoption order did not explicitly so find, it was based nonetheless on plaintiff's sworn asser-

tion that he was married to defendant. Finally, plaintiff would impose an unfair detriment on defendant by undoing an eleven-year marriage were he allowed to proceed with his inconsistent position here. The trial court's application of judicial estoppel was proper, and we affirm its denial of plaintiff's petition for annulment.

This opinion does not address and certainly does not validate any form of "common law marriage." Neither party here claimed to have a common law marriage, and no such issue has been raised before this Court. Our decision is based only upon the application of judicial estoppel to the case before us.

Because we conclude that the trial judge properly denied annulment on grounds of judicial estoppel, we need not address plaintiff's other arguments or defendant's cross-assignment of error.

Affirmed.

Judge LEVINSON concurs.

Judge TYSON dissents in a separate opinion.

TYSON, Judge dissenting.

The majority's opinion holds plaintiff-husband is judicially estopped from obtaining an annulment and denying his eleven-year marriage to defendant-wife because he asserted in a sworn statement that he and defendant were married during the adoption proceeding of defendant's daughter. Defendant's cross assignments of error and appeal from the trial court's conclusion that the wedding ceremony was not properly solemnized and failed to comply with North Carolina's marriage statutes has merit. That portion of the trial court's order should be reversed, and plaintiff's complaint should be dismissed. I respectfully dissent.

## I. Background

In 1991, plaintiff's and defendant's wedding was celebrated on Sourwood Farm, where solemn Cherokee ceremonies regularly occurred. Littlejohn, the shaman and minister performing the marriage, wore a ceremonial ribbon shirt. Defendant wore white. A ceremonial fire burned throughout the ceremony. Littlejohn addressed and hailed, "the creator, ancestors, four-legged creatures, two-legged creatures, creatures without legs, and winged creatures." Plaintiff

and defendant exchanged blankets to symbolize their sexual fidelity. Defendant gave plaintiff poached corn to symbolize her commitment to maintain her husband's home. Plaintiff gave defendant beef jerky to symbolize that he would provide for her as his wife. The parties exchanged wedding rings, and Littlejohn publicly pronounced them as man and wife. Littlejohn presented plaintiff and defendant with a marriage stick and a marriage certificate. The parties had applied for and received a North Carolina Marriage License and Certificate of Marriage in June 1991, which was filed with the Caswell County Register of Deeds Office.

After the ceremony, and for the next eleven years, the parties lived together and held themselves out as husband and wife in the following ways: (1) they visited friends and introduced themselves as husband and wife; (2) they purchased property in Caswell County, as tenants by the entirety, and the deed recited plaintiff and defendant as the grantees and as married; (3) the parties borrowed money as husband and wife; (4) the parties each contributed funds to purchase their marital home; (5) defendant left her profession to remain at home as plaintiff's wife; (6) the parties filed joint tax returns as husband and wife; (7) the parties slept together in a common marital bed and engaged in sexual relations; (8) the parties attended church together and participated in community events as husband and wife; (9) the parties served as guardians for foster children and asserted on the applications they were husband and wife; (10) plaintiff initiated and completed adoption proceedings in Caswell County for a stepparent adoption of defendant's daughter; (11) plaintiff filed a sworn statement in the amended petition for adult adoption that he was the stepfather of the adoptee and was married to her biological mother who gave her consent for the adoption; and (12) following the parties' separation, plaintiff continued to provide defendant with dependant health insurance coverage listing her as his wife.

## II. Issues

Defendant-wife cross assigns as error the trial court's ruling that the parties' marriage was not properly solemnized. I agree with defendant.

The majority's opinion holds because the trial court found "[t]hat at no time was Hawk Littlejohn a minister of the gospel licensed to perform marriages," and "these findings have not been challenged on appeal, they are conclusive on appeal." This "finding of fact" is a "conclusion of law." Defendant assigned error to the trial court's conclu-

sion of law, which stated, "[t]hat the marriage was not properly solemnized in that the person performing the marriage ceremony was not an ordained minister, nor qualified to perform the marriage ceremony." Defendant challenged this conclusion on appeal and properly preserved this issue for appellate review.

### III. Solemnization

A party to a marriage may seek an annulment under North Carolina law. N.C. Gen. Stat. § 50-4 (2003) provides:

> The district court, during a session of court, on application made as by law provided, by either party to a marriage contracted contrary to the prohibitions contained in the Chapter entitled Marriage, or declared void by said Chapter, may declare such marriage void from the beginning, subject, nevertheless, to G.S. 51-3.

"In North Carolina, only bigamous marriages have thus far been declared absolutely void. 1 R. Lee, *North Carolina Family Law* Sec. 18 (4th ed. 1979); *Redfern v. Redfern*, 49 N.C. App. 94, 270 S.E.2d 606 (1980). All other marriages are voidable." *Fulton v. Vickery*, 73 N.C. App. 382, 387, 326 S.E.2d 354, 358, *cert. denied*, 313 N.C. 599, 332 S.E.2d 178 (1985). No issue of bigamy is present before us.

Plaintiff asserts his marriage to defendant is voidable because the marriage ceremony was not solemnized in compliance with North Carolina law. Plaintiff argues Littlejohn was not "an ordained" minister and could not legally pronounce plaintiff and defendant to be husband and wife. Plaintiff also argues the trial court should have granted an annulment because Littlejohn did not qualify as a licensed "minister authorized by his church." Plaintiff's argument fails.

N.C. Gen. Stat. § 51-1 (1977) was the statute governing marriage ceremonies when plaintiff and defendant were married. The statute required the parties to "express their solemn intent to marry in the presence of (1) an ordained minister of any religious denomination, or (2) a minister authorized by his church or (3) a magistrate." *State v. Lynch*, 301 N.C. 479, 487, 272 S.E.2d 349, 354 (1980).

The majority's opinion cites *Kearney v. Thomas*, for the proposition that "[u]pon proof that a marriage ceremony took place, it will be presumed that it was legally performed and resulted in a valid marriage." 225 N.C. 156, 163, 33 S.E.2d 871, 876 (1945). A plaintiff bears the burden to overcome the presumption of a valid marriage to void or annul the marriage. *Geitner v. Townsend*, 67 N.C. App. 159, 163,

312 S.E.2d 236, 239, *disc. rev. denied*, 310 N.C. 744, 315 S.E.2d 702 (1984); *see also Jackson v. Rhem*, 59 N.C. 141, 143 (1860) (evidence to support an annulment "ought to be so overwhelming as to leave not a doubt about the facts thus declared.").

## 1. Solemn Intent to Marry

Plaintiff and defendant "express[ed] their solemn intent to marry" in 1991 at a traditional Cherokee wedding ceremony attended by many witnesses before an "ordained minister." N.C. Gen. Stat. § 51-1. The trial court stated in finding of fact number seventeen that the parties' wedding ceremony was "conducted in the 'Cherokee way' and [performed] in accordance with the Cherokee marriage ceremony." The ceremony was held at a location where Cherokee ceremonies and marriages take place. The parties dressed in traditional Cherokee clothing. A ceremonial fire burned throughout the ceremony. Littlejohn conducted a Cherokee spiritual wedding ceremony as he addressed and hailed the Creator and creatures in nature. Plaintiff and defendant exchanged traditional Cherokee marriage symbols. Plaintiff and defendant exchanged wedding rings, and Littlejohn publicly pronounced them to be husband and wife. Littlejohn presented plaintiff and defendant with a marriage stick and a North Carolina marriage license, which was subsequently filed with the Caswell County Register of Deeds. The statute's requirement of the parties to express a solemn intent to marry is satisfied.

North Carolina acknowledges and celebrates the solemnity of a native tribal wedding ceremony and validates the ceremony as a recognized marriage as evidenced in the General Assembly's passage of N.C. Gen. Stat. § 51-3.2 (2003). The statute provides:

(a) Subject to the restriction provided in subsection (b), a marriage between a man and a woman licensed and solemnized according to the law of a federally recognized Indian Nation or Tribe shall be valid and the parties to the marriage shall be lawfully married.

(b) When the law of a federally recognized Indian Nation or Tribe allows persons to obtain a marriage license from the register of deeds and the parties to a marriage do so, Chapter 51 of the General Statutes shall apply and the marriage shall be valid only if the issuance of the license and the solemnization of the marriage is conducted in compliance with this Chapter.

N.C. Gen. Stat. § 51-3.2.

PICKARD v. PICKARD

[176 N.C. App. 193 (2006)]

While this statute was enacted after plaintiff and defendant were married, the statute illustrates North Carolina's legislative intent to uphold marriages celebrated and solemnized "according to the law of a federally recognized Indian Nation or Tribe." *Id.*

### 2. In the Presence of a Minister

Plaintiff asked Littlejohn, an ordained minister, to perform the ceremony. Littlejohn had performed other weddings in the Cherokee tradition. Neither plaintiff nor defendant questioned Littlejohn's credentials or authority to perform the wedding ceremony for over eleven years until after the parties separated on 9 April 2002. It is undisputed that a solemn wedding ceremony occurred. The parties publicly consented to be married and both believed Littlejohn was an ordained minister authorized to perform weddings and legally qualified to pronounce them as husband and wife. Plaintiff and defendant obtained a North Carolina Marriage License, which states Littlejohn was an ordained minister.

For eleven years, the parties held themselves out to be legally married, and conducted all their business and personal affairs as husband and wife. Before plaintiff and defendant separated, plaintiff requested a divorce from defendant.

Plaintiff entered into evidence a copy of Littlejohn's ordination of ministry from the Universal Life Church. Plaintiff argues these credentials were insufficient to comply with the marriage statute. He asserts Littlejohn did not possess the legal authority to validly perform the parties' wedding ceremony in North Carolina and contends the marriage is voidable.

In *Lynch*, a criminal prosecution for bigamy, our Supreme Court stated:

"[A] marriage pretendedly celebrated before a person not authorized would be a nullity." *State v. Wilson*, 121 N.C. 650, 656-57, 28 S.E. 416, 418 (1897). A ceremony solemnized by a Roman Catholic layman in the mail order business who bought for $ 10.00 a mail order certificate giving him "credentials of minister" in the Universal Life Church, Inc.—whatever that is—is not a ceremony of marriage to be recognized *for purposes of a bigamy prosecution* in the State of North Carolina. The evidence does not establish—rather, it negates the fact—that Chester A. Wilson was authorized under the laws of this State to perform a marriage ceremony.

301 N.C. at 488, 272 S.E.2d at 354-55 (1980) (emphasis supplied).

PICKARD v. PICKARD

[176 N.C. App. 193 (2006)]

Following the Court's decision in *Lynch*, the General Assembly enacted N.C. Gen. Stat. § 51-1.1, which provides:

Any marriages performed by ministers of the Universal Life Church prior to July 3, 1981, are validated, unless they have been invalidated by a court of competent jurisdiction, provided that all other requirements of law have been met and the marriages would have been valid if performed by an official authorized by law to perform wedding ceremonies.

This statute rendered the marriage performed by an ordained minister of the Universal Life Church valid in *Fulton*. 73 N.C. App. at 387, 326 S.E.2d at 358. In *Fulton*, the parties married in 1972. 73 N.C. App. at 384, 362 S.E.2d at 356. Charles E. Vickery performed the marriage ceremony as an ordained minister by the Universal Life Church. *Id.* at 385, 362 S.E.2d at 356. In 1979, the Fultons entered into a separation agreement that stated that the parties were married in Chapel Hill in 1972. *Id.* The agreement provided that the plaintiff would deed her interest in the marital residence to the defendant. *Id.* The plaintiff filed suit against defendant in 1980 to enforce the agreement. *Id.* While the suit was pending, our Supreme Court issued the *Lynch* decision. *Id.* The defendant Fulton moved for summary judgment and argued the marriage was voidable because the marriage ceremony was performed by an ordained minister in the Universal Life Church. *Id.* Summary judgment was granted, and the plaintiff appealed. *Id.* In 1981, the General Assembly passed N.C. Gen. Stat. § 51-1.1. The plaintiff withdrew her appeal. *Id.* The plaintiff filed the later action in 1983. This Court stated, "[a]s the marriage between plaintiff and defendant Fulton was never invalidated, then G.S. Sec. 51-1.1 (1984) applies to validate the marriage. The net effect of the statute is to render the marriage valid from its inception." *Id.* at 387, 362 S.E.2d at 358.

Here, plaintiff and defendant were married in 1991. Littlejohn was licensed by the Universal Life Church on 4 June 1985 as an "ordained minister." Our Supreme Court stated in *Lynch*, "[i]t is not within the power of the State to declare what is or is not a religious body or who is or is not a religious leader within the body." 301 N.C. at 488, 272 S.E.2d at 354 (citing *State v. Bray*, 35 N.C. 289 (1852)). Unlike the Universal Life minister in the criminal bigamy prosecution in *Lynch*, Littlejohn had performed many wedding ceremonies as a Cherokee Indian in the Cherokee tradition. Littlejohn was known throughout North Carolina as a Cherokee shaman and medicine man who performed various Cherokee rituals, including wedding cere-

monies. Littlejohn's death certificate listed his profession as a "craftsman/medicine man."

Also, in *Lynch*, the State had the highest burden to prove the defendant had committed bigamy. The Court stated, "the State is required to establish beyond a reasonable doubt that Chester A. Wilson was an ordained minister of a religious denomination or a minister authorized by his church." *Id.* at 487, 272 S.E.2d at 354. The Court held that the State failed to meet their burden to prove the minister was legally ordained. *Id.*

In the present case, the burden of proof rests upon plaintiff to prove the invalidity or voidability of the marriage. *Geitner*, 67 N.C. App. at 163, 312 S.E.2d at 239. Plaintiff carries a heavy burden. *Jackson*, 59 N.C. at 143. The only evidence plaintiff offered to prove the invalidity of his marriage to defendant was that Littlejohn was ordained and licensed by the Universal Life Church. The presumption remains that plaintiff and defendant were married in accordance with N.C. Gen. Stat. § 51-1. They "express[ed] their solemn intent to marry in the presence of an ordained minister." *Lynch*, 301 N.C. at 487, 272 S.E.2d at 354.

Plaintiff failed to produce any evidence or offer any controlling law that Littlejohn was not an "ordained minister" or not "authorized by his church" to perform weddings in accordance with the traditions of the Cherokee Nation or in accordance with our applicable statute. N.C. Gen. Stat. § 51-1. Undisputed evidence in the record shows Littlejohn was ordained as a minister by the Universal Life Church to perform weddings and performed weddings and other solemn ceremonies in the Cherokee tradition. *State v. Lynch*, 301 N.C. at 488, 272 S.E.2d at 354. Defendant's cross assignment of error is meritorious.

The trial court erred in holding the parties' wedding was not properly solemnized under our statute. Because plaintiff failed to overcome the presumption of a valid marriage, we do not need to wade into the murky waters of a case-by-case, *ad hoc*, factual analysis under an equitable remedy of estoppel to uphold the validity of the parties' marriage. Because plaintiff failed to overcome his burden to show the plain requirements of the statute were not satisfied, it is wholly unnecessary to reach plaintiff's assignments of error, and his complaint should be dismissed.

By affirming the trial court's order on the basis of estoppel, the majority effectively validates common law marriages in North Carolina. Our Supreme Court has held:

A common law marriage or marriage by consent is not recognized in this State. *State v. Alford*, 298 N.C. 465, 259 S.E.2d 242 (1979); *State v. Samuel*, 19 N.C. 177 (1836). Consent is just one of the essential elements of a marriage. The marriage must be acknowledged in the manner and before some person prescribed in G.S. 51-1.

*Id.*

## IV. Conclusion

The parties obtained a valid North Carolina marriage license and expressed their intent to marry in the presence of witnesses and an "ordained minister" who was "authorized by his church" in a solemn Cherokee ceremony. N.C. Gen. Stat. §§ 51-1 and 51-3.2. The plain language of the statute was satisfied. The latest legislative expressions were to validate marriages performed by ordained ministers of the Universal Life Church and marriages performed in the Cherokee tradition. *Id.*

Because plaintiff failed to overcome his "heavy burden" to annul his marriage, the trial court's order ruling the parties' ceremony was not legally solemnized should be reversed, and plaintiff's complaint should be dismissed. *Jackson*, 59 N.C. at 143. In light of this error, it is unnecessary to, and we should not, reach plaintiff's assignments of error. I respectfully dissent.