ZACHARY, Judge.
 

 *310
 
 Barbara G. O'Neal was adjudicated incompetent and defendant Pamela Sue O'Neal was appointed as Barbara's general guardian. Pamela was later removed from that position. An attorney was then appointed
 
 *186
 
 guardian of Barbara's estate, and the Currituck County Department of Social Services was appointed guardian of Barbara's person. Shortly before Pamela was removed as Barbara's guardian, Barbara executed a power of attorney appointing Pamela as her attorney-in-fact. Acting as Barbara's attorney-in-fact, Pamela executed three deeds transferring real property owned by Barbara to different land trusts. The guardian of Barbara's estate revoked the power of attorney. Barbara, by and through the guardian of her estate (plaintiff),
 
 [2]
 
 then brought an action to have the power of attorney and the deeds declared void. After plaintiff filed her complaint and defendants filed their answer, the superior court entered an order granting judgment on the pleadings in favor of plaintiff. For the reasons that follow, we affirm the superior court's order.
 

 I. Background
 

 Pamela is the granddaughter of Barbara. In July 2011, Pamela filed a petition to have Barbara, who was seventy-nine years old at the time, adjudicated incompetent. The petition stated,
 
 inter alia
 
 , that Barbara suffered from "a long history of prescription substance abuse[,]" that she had been transferred "to Currituck House Assisted Living," and that she suffered from "[m]ajor [d]epression with chronic anxiety, seizure disorder, memory loss, hypothyroidism [,] and diabetes." Pamela also alleged that Barbara lacked the capacity to handle her financial affairs or to "resist attempts of financial exploitation" by others. As a result, the Currituck County Clerk of Superior Court entered an order on 17 August 2011, which adjudicated Barbara incompetent, retaining no rights or privileges. The order also appointed Pamela as Barbara's general guardian.
 

 Four years later, the clerk revoked Pamela's letters of general guardianship in an order entered 12 October 2015. The clerk found that, as
 
 *311
 
 "the sole heir at law of Barbara O'Neal[,]" Pamela had a "private interest in [Barbara's estate,]" and that "this private interest might tend to hinder or be adverse to Pamela O'Neal in the carrying out of her duties as General Guardian[.]" However, on 10 October 2015, two days before the clerk's revocation order was entered, Barbara executed a durable power of attorney appointing Pamela as her attorney-in-fact. The power of attorney was recorded in the Office of the Currituck County Register of Deeds on 30 October 2015. That same day, two quitclaim deeds were executed by Pamela as attorney-in-fact for Barbara. The first deed conveyed certain real property owned by Barbara to the "Barbara O'Neal Land Trust[,]" and the second deed conveyed a 13.10-acre parcel owned by Barbara to the "Barbara O'Neal Farm Land Trust[.]" On 10 November 2015, Pamela, as attorney-in-fact for Barbara, executed a quitclaim deed conveying Barbara's interest in a 87-acre parcel to the "Barbara O'Neal Barco Land Trust." Pamela was named trustee of all the aforementioned land trusts. All three deeds were recorded in the Office of the Currituck County Register of Deeds.
 

 On 18 November 2015, attorney G. Elvin Small, III was appointed the guardian of Barbara's estate. Acting on behalf of Barbara, Small revoked the October 2015 power of attorney executed in favor of Pamela. Pamela then procured Barbara's signature on a second power of attorney on 4 December 2015, again naming Pamela as Barbara's attorney-in-fact. The second power of attorney, which was also revoked by Small, was not used to conduct any transactions on Barbara's behalf.
 

 On 1 April 2016, Small, as guardian of Barbara's estate, instituted the present action in Currituck County Superior Court seeking,
 
 inter alia
 
 , a judgment declaring both of Pamela's powers of attorney as well as the 30 October 2015 and the 10 November 2015 deeds to be null and void. In her answer to plaintiff's complaint, Pamela admitted that Barbara had been adjudicated incompetent on 17 August 2011, and that Barbara's competence had not been restored. In June 2016, plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure.
 

 *187
 
 A hearing was conducted by Judge Walter H. Godwin, who entered an order granting plaintiff's motion for judgment on the pleadings. The superior court's order, filed 8 August 2016, provided that the two powers of attorney executed by Barbara appointing Pamela as attorney-in-fact were void
 
 ab initio
 
 , as were the three deeds that Pamela executed as Barbara's attorney-in-fact in October and November 2015. The superior court ruled that these instruments were void because they were "executed by Barbara G. O'Neal, a person who was adjudicated incompetent
 
 *312
 
 on August 18, 2011, and whose legal competency has not been restored, or they ... were executed on her behalf by the attorney in fact named in a power of attorney executed by said incompetent person." Pamela and the other named defendants appeal from the superior court's order granting judgment on the pleadings in favor of plaintiff.
 

 II. Standard of Review
 

 This Court reviews a trial court's ruling on a Rule 12(c) motion for judgment on the pleadings
 
 de novo
 
 .
 
 Toomer v. Branch Banking & Trust Co.
 
 ,
 
 171 N.C. App. 58
 
 , 66,
 
 614 S.E.2d 328
 
 , 335 (2005). Because "[j]udgments on the pleadings are disfavored in law, ... the trial court must view the facts and permissible inferences in the light most favorable to the non-moving party."
 
 Groves v. Community Hous. Corp.
 
 ,
 
 144 N.C. App. 79
 
 , 87,
 
 548 S.E.2d 535
 
 , 540 (2001) (citation omitted). Even so, judgment on the pleadings "is appropriate when all the material allegations of fact are admitted in the pleadings and only questions of law remain."
 

 Id.
 

 (internal citations and quotation marks omitted).
 

 III. Powers of Attorney
 

 "A power of attorney is an instrument in writing granting power in an agent to transact business for his principal."
 
 Cabarrus Bank & Trust Co. v. Chandler
 
 ,
 
 63 N.C. App. 724
 
 , 726,
 
 306 S.E.2d 184
 
 , 185 (1983) (citations omitted). The agency relationship that results is between "one who gives the power, the principal, and one who exercises authority under the power of attorney, the agent."
 
 Whitford v. Gaskill
 
 ,
 
 119 N.C. App. 790
 
 , 793,
 
 460 S.E.2d 346
 
 , 348 (1995),
 
 rev'd on other grounds
 
 ,
 
 345 N.C. 475
 
 ,
 
 480 S.E.2d 690
 
 (1997). Any act performed by the agent is as if the principal had performed it.
 
 See
 

 Branch Banking and Trust Co. v. Creasy
 
 ,
 
 301 N.C. 44
 
 , 56,
 
 269 S.E.2d 117
 
 , 124 (1980) ("An agent is one who acts for or in the place of another by authority from him."). Although special rules apply to the fiduciary relationship between a principal and agent, there is, as a general matter, little reason to draw distinctions between powers of attorney and contracts.
 
 See
 

 Hedgepeth v. Home Savs. & Loan Ass'n
 
 ,
 
 87 N.C. App. 610
 
 , 612,
 
 361 S.E.2d 888
 
 , 890 (1987) (determining that power of attorney at issue "should be treated the same as any other contract") (citations omitted); 12
 
 Williston on Contracts
 
 § 35:1, at 202 (4th ed. 2012) ("An agency contract is formed according to the same rules that are applicable to any other contract; an agency is created in much the same manner as a contract is made, in that the agency results from an agreement between the principal and the agent to serve in that capacity."). As a result, we will apply general principles of contract law to the power of attorney that Barbara executed appointing Pamela her attorney-in-fact.
 

 *313
 

 IV. Discussion
 

 Defendants' principal argument on appeal is that the superior court erred in declaring Pamela's first power of attorney (and the deeds she executed pursuant to that power) void
 
 ab initio
 
 . According to defendants, "[a]lthough a person declared incompetent lacks the capacity to enter contracts, such that contracts are
 
 voidable
 
 ..., an incompetent person retains many rights and powers to direct their care and finances." In support of this assertion, defendants cite case law holding that allegations concerning an incompetent person's ability to make a will or enter into marriage merely create an issue of fact as to whether the person possessed the necessary capacity to make the transaction at the time it was made.
 
 See
 

 Geitner v. Townsend
 
 ,
 
 67 N.C. App. 159
 
 ,
 
 312 S.E.2d 236
 
 (1984) ;
 
 In re Will of Maynard
 
 ,
 
 64 N.C. App. 211
 
 ,
 
 307 S.E.2d 416
 
 (1983). We disagree, and find that
 
 Geitner
 
 is inapposite to this case
 
 *188
 
 and that
 
 Maynard
 
 actually cuts against defendants' argument.
 

 In
 
 Geitner
 
 , a man married a woman after he had been adjudicated incompetent and placed under guardianship, and the question on appeal was whether the jury properly determined that the man had sufficient mental capacity to enter into the marriage.
 
 67 N.C. App. at 160-161
 
 ,
 
 312 S.E.2d at 237-38
 
 . This Court went on to affirm the judgment entered upon the jury's verdict finding that the man had sufficient mental capacity to contract a valid marriage.
 
 Id.
 
 at 162,
 
 312 S.E.2d at 239
 
 . In doing so, the
 
 Geitner
 
 Court specifically observed that " '
 
 unlike other transactions
 
 , an insane person's capacity to marry is not necessarily affected by guardianship.... (R)easons why guardianship removes from the insane person
 
 all capacity to contract
 
 do not apply to marriage.' "
 

 Id.
 

 (emphasis added) (quoting
 
 Lee's North Carolina Family Law
 
 , § 24 n. 119 (4th ed. 1979) (citation omitted)). Thus, the capacity to marry stands on an entirely different footing than one's ability to make contracts or appoint agents.
 

 In
 
 Maynard
 
 , the testatrix executed a will, was later adjudicated incompetent, and then executed a second will expressly revoking the first will.
 
 64 N.C. App. at 212
 
 ,
 
 307 S.E.2d at 419
 
 . In the caveat proceeding, the trial court submitted to the jury the issue of which will should be admitted to probate, and the jury found that the second will was a valid Last Will and Testament. This Court affirmed. After noting that there is a presumption "that a testator possessed testamentary capacity" and that any party alleging otherwise bears the burden of proving a lack of capacity,
 
 id.
 
 at 225,
 
 307 S.E.2d at 426
 
 , the
 
 Maynard
 
 Court determined that a declaration that one is incompetent to manage his affairs does not, by itself, establish a lack of testamentary capacity; rather, it is simply
 
 *314
 

 prima facie
 
 evidence of incapacity.
 
 Id.
 
 at 225,
 
 307 S.E.2d at 427
 
 . In this way, the Court drew a critical distinction between the capacity to manage one's own affairs and the capacity to make a will:
 

 [W]here a person has been declared incompetent to
 
 manage his affairs
 
 , and a guardian appointed, the person is presumed to lack mental capacity to
 
 manage his affairs
 
 , and
 
 this presumption is conclusive as to parties and privies to the guardianship proceedings
 
 and rebuttable as to all others. As to
 
 testamentary capacity
 
 , a person for whom a guardian has been appointed is presumed "
 
 in the absence of proof to the contrary
 
 " to lack
 
 testamentary capacity
 
 . The presumption as to
 
 testamentary incapacity
 
 is necessarily a rebuttable one, or there could be no "proof to the contrary."
 

 Id.
 
 at 225,
 
 307 S.E.2d at 426-27
 
 (third emphasis added).
 

 Under the rules set forth in
 
 Maynard
 
 , a person who has been declared incompetent and placed under a guardianship may possess sufficient testamentary capacity, but the adjudication of incompetence conclusively establishes the person's incapacity to manage his affairs as to parties to the guardianship proceedings. In the present case, Pamela was not only a party to Barbara's initial guardianship proceeding,
 
 Pamela instituted the guardianship proceedings and served as Barbara's guardian for four years
 
 . Barbara's incapacity was, therefore, conclusively established as to Pamela. Accordingly, we examine the effect of Barbara's adjudication of incompetency on her capacity to execute a power of attorney, and Pamela's authority to execute deeds as Barbara's attorney-in-fact.
 

 After a careful examination of the relevant North Carolina jurisprudence, we find that the following principles apply to this case. Although "[t]he law presumes that every person is sane in the absence of evidence to the contrary[,] ... after a person has ... been found to be mentally incompetent[,] there is a presumption that the mental incapacity continues."
 
 Davis v. Davis
 
 ,
 
 223 N.C. 36
 
 , 38,
 
 25 S.E.2d 181
 
 , 183 (1943). Ordinarily, when a mentally incompetent person executes a contract or deed before their condition has been formally declared, the resulting agreement or transaction is voidable and not void.
 
 E.g.
 
 ,
 
 Chesson v. Pilot Life Ins. Co.
 
 ,
 
 268 N.C. 98
 
 , 102,
 
 150 S.E.2d 40
 
 , 43 (1966) ;
 
 Reynolds v. Earley
 
 ,
 
 241 N.C. 521
 
 , 524,
 
 85 S.E.2d 904
 
 , 906 (1955) ;
 
 Wadford v. Gillette
 
 ,
 
 193 N.C. 413
 
 , 420,
 
 137 S.E. 314
 
 , 317 (1927). But a contract or deed executed after a person has been adjudicated incompetent is absolutely void absent proof that
 
 *315
 
 the person's mental capacity was restored prior to executing the
 
 *189
 
 instrument.
 
 Tomlins v. Cranford
 
 ,
 
 227 N.C. 323
 
 , 326,
 
 42 S.E.2d 100
 
 , 101 (1947) ;
 
 Wadford
 
 ,
 
 193 N.C. at 420
 
 ,
 
 137 S.E. at 317
 
 .
 

 As mentioned above, we treat the power of attorney at issue in this case the same as any other contract. Under
 
 Maynard
 
 , the clerk's 2011 order, which formally adjudicated Barbara incompetent and placed her under a guardianship, conclusively established (as to Pamela) Barbara's incapacity to enter into legally-binding contracts. In other words, this incapacity was established as a matter of law. Because there is no evidence in the record that Barbara's competency was restored before she executed the power of attorney on 10 October 2015, the power of attorney was a nullity and of no legal effect. As such, Pamela had no legal authority to act as Barbara's attorney-in-fact when she executed the three deeds at issue and purported to convey property to the relevant land trusts of which she was trustee. Our conclusion rests upon the notion that when the principal is adjudicated incompetent before executing a power of attorney in favor of the agent, the principal cannot give a legally operative consent, and no agency relationship results. Accordingly, because Barbara's power of attorney and the deeds that Pamela executed pursuant to it were void
 
 ab initio
 
 , the superior court properly granted judgment on the pleadings in favor of plaintiff.
 

 Finally, we address two concerns that arise from defendants' arguments on appeal. First, defendants concern for innocent third parties is misplaced. Concluding that a power of attorney executed by a person who has been adjudicated incompetent is void poses no threat to subsequent good faith purchasers of real property. Indeed, it is already well established that a deed executed by a person who has been judicially declared incompetent is void.
 
 Tomlins
 
 ,
 
 227 N.C. at 326
 
 ,
 
 42 S.E.2d at
 
 101 ;
 
 Wadford
 
 ,
 
 193 N.C. at 420
 
 ,
 
 137 S.E. at 317
 
 . Beyond that, a diligent potential purchaser of real property would discover an attorney-in-fact's inability to execute a valid deed on behalf of a previously-adjudicated incompetent person via the court order adjudicating the person to be incompetent, to be found in the special proceedings index. Potential purchasers are on constructive notice of all information properly recorded in the land and court records of the county in which the property is located as well as the relevant special proceedings index.
 
 See
 

 Stegall v. Robinson
 
 ,
 
 81 N.C. App. 617
 
 , 619,
 
 344 S.E.2d 803
 
 , 804 (1986) ("A purchaser ... has constructive notice of all duly recorded documents that a proper examination of the title should reveal.").
 

 Second, defendants proclaim that "[c]onsistent with the public policy of North Carolina, Barbara O'Neal should be able to appoint her
 
 *316
 
 granddaughter as her power of attorney, and to instruct her as to how she wants her property handled." However, the court and Pamela agreed that Barbara was unable to manage her financial affairs. Moreover, Pamela may have made the conveyances pursuant to this State's guardianship statutes, if doing so would have "materially promoted" Barbara's interests. Pamela, while serving as Barbara's guardian, could have petitioned the clerk for the authority to execute the deeds.
 
 See
 
 N.C. Gen. Stat. § 35A-1301(b) (2015) (permitting a guardian to apply to the clerk to,
 
 inter alia
 
 , "sell ... any part of his ward's real estate," and authorizing the clerk to "order a sale ... to be made by the guardian in such way and on such terms that may be most advantageous to the interest of the ward, upon finding by satisfactory proof that" the guardian's application meets certain criteria). What Pamela could
 
 not
 
 do was sign the deeds pursuant to a power of attorney that was executed well after Barbara was adjudicated incompetent.
 

 V. Conclusion
 

 For the reasons explained above, we conclude that Barbara's adjudication of incompetency rendered her incapable of executing a legally operative power of attorney. The power of attorney was void. Consequently, the deeds that Pamela executed as Barbara's attorney-in-fact were also void, and the superior court properly granted plaintiff's motion for judgment on the pleadings. The order of the superior court is affirmed.
 

 AFFIRMED.
 

 Chief Judge McGEE and Judge HUNTER, JR. concur.
 

 [2]
 

 In this opinion, we refer to Barbara O'Neal and her guardian collectively as "plaintiff" and to Barbara O'Neal individually as "Barbara."