NO. COA12-399-2

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

BARBARA R. DUNCAN
    Plaintiff,

    v.
                                   Macon County
                                   No. 05 CVD 338

JOHN H. DUNCAN,
    Defendant.

Appeal by Defendant from the following orders and judgment entered in the District Court, Macon County: order entered 15 October 2007 by Judge Monica Leslie; orders entered 31 March and 4 September 2008 by Judge Richard K. Walker; order entered 18 September 2009 and judgment entered 2 September 2010 by Judge Steven J. Bryant; and orders entered 14 April 2011 and 18 January 2012 by Judge Richard K. Walker. Originally heard in the Court of Appeals 11 September 2012, with opinion filed 2 October 2012. Reconsidered pursuant to an opinion of the North Carolina Supreme Court, entered 13 June 2013.

    *Siemens Family Law Group, by Jim Siemens, and Ruley Law Offices, by Douglas A. Ruley, for Plaintiff.*

    *Hyler & Lopez, PA, by Stephen P. Agan and George B. Hyler, Jr., for Defendant.*

DILLON, Judge.

## I. Factual & Procedural Background

Barbara R. Duncan (Plaintiff) and John H. Duncan (Defendant) exchanged vows in two separate marriage ceremonies in North Carolina occurring twelve years apart. The first ceremony occurred on 15 October 1989 (the 1989 ceremony) and was presided over by Hawk Littlejohn, who held himself out to be a Cherokee medicine man[1] and who was ordained as a minister by the Universal Life Church. In 2001, the parties' estate planning attorney expressed his concern that the 1989 ceremony was not valid; and, accordingly, on 14 October 2001, Plaintiff and Defendant participated in a second ceremony at the First Presbyterian Church in Franklin, North Carolina (the 2001 ceremony).

In 2005, Plaintiff commenced this action seeking, *inter alia*, divorce, equitable distribution, alimony, and child support, alleging that the parties' date of marriage was 15 October 1989, the date of the 1989 ceremony. Defendant filed responsive pleadings alleging, *inter alia*, that Hawk Littlejohn was not authorized under North Carolina law to perform a valid marriage ceremony; and, therefore, the parties' date of marriage was 14 October 2001, the date of the 2001 ceremony. Accordingly,

---

[1] In Defendant's verified complaint, he alleged that Hawk Littlejohn was not, in fact, a Native American but had changed his name from his given name, Larry Snyder.

Defendant prayed the trial court to declare the 1989 ceremony invalid under North Carolina law.

Following a hearing, the trial court entered an order on 15 October 2007 (the 2007 order), concluding that the 1989 ceremony resulted in a valid marriage, that 15 October 1989 was "the date of marriage for all matters related to this Chapter 50 action" and that Defendant was estopped from contesting the validity of the 1989 ceremony.[2]

The trial court subsequently entered a number of additional orders and an equitable distribution judgment. Defendant appeals from the 2007 order and from a number of subsequently entered orders that he contends were affected by the 2007 order. Defendant also appeals from an order in which the trial court concluded that Plaintiff was "actually substantially dependent on [] Defendant for her support as of the date of separation" and a separate order in which the trial court held open the issue of whether to award attorney's fees. Because the trial court left open the award of attorney's fees, this Court, relying on our Supreme Court's decision in *Bumpers v. Cmty. Bank of N. Va.*, 364 N.C. 195, 695

---

[2] In late 2007, Defendant appealed from the 2007 order. However, this Court dismissed the interlocutory appeal for lack of jurisdiction. *Duncan v. Duncan*, 193 N.C. App. 752, 761 S.E.2d 71, 2008 WL 4911807 (2008) (unpublished).

S.E.2d 442 (2010), reasoned that Defendant's appeal was interlocutory and dismissed it as untimely. *Duncan v. Duncan*, ___ N.C. App. ___, ___, 732 S.E.2d 390, 392 (2012).

Following discretionary review, our Supreme Court reversed, holding that an open request for attorney's fees does not prevent a judgment on the merits from being final. *Duncan v. Duncan*, 366 N.C. 514, 742 S.E.2d 799 (2013). On remand from our Supreme Court, we now consider the merits of Defendant's appeal.

## II. Analysis

Defendant's arguments on appeal are essentially that (1) the trial court erred in its 2007 order by determining that 15 October 1989 was the date of marriage for all matters related to this action; and (2) the trial court erred in its order in which it determined that Plaintiff was actually substantially dependent on Defendant for her support as of the date of separation. For the reasons stated below, we affirm the orders of the trial court.

## A. Date of Marriage

Defendant argues that the 1989 ceremony was invalid; and, therefore, that the trial court erred in establishing the date of marriage based on the 1989 ceremony. As an initial matter, we hold that the issue regarding the validity of the 1989 ceremony was properly before the trial court. A marriage based on a

ceremony in North Carolina not properly solemnized pursuant to the requirements of N.C. Gen. Stat. § 51-1 is voidable. *See Fulton v. Vickery*, 73 N.C. App. 382, 387, 326 S.E.2d 354, 358 (1985) (stating that a marriage performed by a minister of the Universal Life Church, not otherwise cured by N.C. Gen. Stat. § 51-1.1, was voidable). A party may apply to the court for a declaration that a voidable marriage "be declared void from the beginning[.]" N.C. Gen. Stat. § 50-4 (2013). However, a voidable marriage remains valid "for all civil purposes, until annulled by a competent tribunal *in a direct proceeding*." *Geitner v. Townsend*, 67 N.C. App. 159, 161, 312 S.E.2d 236, 238 (1984) (emphasis added).

Here, in his counterclaim, Defendant prays the court for an order "to declare [the 1989 ceremony] invalid[,]" which we believe is an application under N.C. Gen. Stat. § 50-4 for an order to "declare [a voidable] marriage void[,]" to the extent that the parties' marriage is based on the 1989 ceremony. In other words, we believe that N.C. Gen. Stat. § 50-4 applies in this case even though Defendant does not seek to annul his marriage *in toto* - indeed, he admits that he and Plaintiff were lawfully married by virtue of their 2001 ceremony - but merely requests that the court declare the marriage invalid insomuch as it is based on the 1989 ceremony. Further, where one party sues for divorce, we believe

that a counterclaim by the opposing party seeking an order to declare the marriage invalid constitutes a "direct proceeding." *See Sprinkle v. N.C. Wildlife*, 165 N.C. App. 721, 735, 600 S.E.2d 473, 482 (2004) (holding that "a counterclaim is in the nature of an independent proceeding[, and] the filing of a counterclaim is to initiate a 'civil action'").

In this case, Defendant argues that the trial court erred by concluding that the 1989 ceremony was properly solemnized and by concluding that he "was judicially and equitably estopped from arguing" otherwise. For the reasons below, we believe that the trial court erred by concluding that the 1989 ceremony was properly solemnized and that Defendant was *judicially* estopped from contesting the validity of the 1989 ceremony; however, we do not believe that the trial court erred by concluding that Defendant was *equitably* estopped from contesting the validity of the 1989 ceremony. Therefore, we affirm the 2007 order to the extent that it concludes that Defendant is equitably estopped from challenging the validity of the 1989 ceremony and the date of marriage, for purposes of this action, to be 15 October 1989.

1. The 1989 Ceremony Was Voidable

Regarding the validity of the 1989 ceremony, Defendant does *not* argue that the ceremony did not take place. Rather, he

contends that Hawk Littlejohn, who officiated the ceremony, was not authorized under the North Carolina law in effect at that time to solemnize a marriage.

Our Supreme Court has held that "[a] common law marriage or marriage by consent is not recognized by this State." *State v. Lynch*, 301 N.C. 479, 487, 272 S.E.2d 349, 354 (1980). Rather, "[t]o constitute a valid marriage in this State, the requirements of G.S. 51-1 must be met." *Id.* at 486, 272 S.E.2d at 353. The version of N.C. Gen. Stat. § 51-1 in effect in 1989 required, in pertinent part, that the parties "'express their solemn intent to marry in the presence of (1) an ordained minister of any religious denomination; or (2) a minister authorized by his church; or (3) a magistrate.'" *Pickard v. Pickard*, 176 N.C. App. 193, 196, 625 S.E.2d 869, 872 (2006) (quoting *Lynch*, 301 N.C. at 487, 272 S.E.2d at 354).[3] However, when it is established that a marriage ceremony has occurred – as is the case here – "the burden of showing that it was an invalid marriage rests on the party asserting its invalidity." *Overton v. Overton*, 260 N.C. 139, 143, 132 S.E.2d 349, 352 (1963); *see also Kearney v. Thomas*, 225 N.C. 156, 163, 33

---

[3] N.C. Gen. Stat. § 51-1 was amended in 2001 to add a provision which authorizes a ceremony to be valid as long as it is held "[i]n accordance with any mode of solemnization recognized by any religious denomination, or federally or State recognized Indian Nation or Tribe." N.C. Gen. Stat. § 51-1(2) (2013).

S.E.2d 871, 876 (1945) (stating that where there is "proof that a marriage ceremony took place, it will be presumed that it was legally performed and resulted in a valid marriage"). Accordingly, Defendant bore the burden of demonstrating that Hawk Littlejohn was not authorized under N.C. Gen. Stat. § 51-1 to solemnize the 1989 marriage ceremony. Based on the evidence that was before the trial court, we believe that Defendant met this high burden.

The record on appeal contains a statement of the evidence that was presented to the trial court, pursuant to Rule 9(c) of our Appellate Rules.[4] With regard to the evidence presented before the trial court concerning Hawk Littlejohn's authority to solemnize the 1989 ceremony, the Rule 9(c) statement sets forth that the parties made the court aware of the Supreme Court's 1980 opinion in *Lynch*, *supra*; and, further, that the parties stipulated that Hawk Littlejohn had performed the 1989 ceremony, that he was a minister ordained by the Universal Life Church, and that the relevant facts regarding the Universal Life Church as it applies in this case were essentially the same as described by the Supreme Court in *Lynch*.

---

[4] The record states that the audio recording of the hearing has been lost.

In *Lynch*, our Supreme Court reversed a bigamy conviction of a defendant where one of his two marriages was solemnized before a Universal Life Church minister. *Lynch*, *supra*. The Court described the Universal Life Church as a church, headquartered in Modesto, California, with "no traditional doctrine" who "will ordain anyone, without question to his/her faith," and that their ministers, which number over 7 million, have the authority to officiate at marriages but otherwise are "not require[d] to give up [their] membership with any other church to be a minister of the ULC, Inc." *Id.* at 483, 272 S.E.2d at 351. The Court further described that the process of receiving certification as an ordained minister in the Universal Life Church involved simply mailing one's name, address and ten dollars to the Church's California headquarters, and that the Church did not require any further proceedings or training as a requirement for ordination. *Id.* In reversing the bigamy conviction, the Court stated as follows:

> A ceremony solemnized by a [layman] who bought for $10.00 a mail order certificate giving him 'credentials of minister' in the Universal Life Church, Inc. – whatever that is – is not a ceremony of marriage to be recognized for purposes of a bigamy prosecution in the State of North Carolina. *The evidence does not establish – rather, it negates the fact – that [the "minister"] was authorized under the laws of this State to perform a marriage ceremony.*

*Id.* at 488, 272 S.E.2d at 355 (emphasis added).

Since the record shows that Plaintiff stipulated that the "relevant facts" concerning the Universal Life Church and Hawk Littlejohn's ordination as a minister therein were essentially the same as described by our Supreme Court in *Lynch*, and since our Supreme Court in *Lynch* stated that evidence that an individual was ordained by the Universal Life Church – as the Church is described in that case - "negates the fact that [the individual] was authorized under the laws of this State to perform a marriage ceremony," we are compelled in the present case to conclude that Defendant met his high burden of demonstrating that Hawk Littlejohn was not authorized under the applicable version of N.C. Gen. Stat. § 51-1 to solemnize the 1989 ceremony.

We do not agree with the trial court's conclusion that N.C. Gen. Stat. § 51-1.1 passed by our Legislature in 1981, the year after *Lynch* was decided, renders the 1989 ceremony valid. Specifically, the trial court correctly found that "the Legislature passed N.C. Gen. Stat. Sec. 51-1.1 in 1981, prior to the parties [sic] marriage, which expressly validated all marriages performed by ministers of the Universal Life Church prior to July 3, 1981[,]" but then erroneously concluded that "the effect of [N.C. Gen. Stat. § 51-1.1] is to give legislative approval to

marriages performed by ministers of the Universal Life Church[.]"

In other words, we believe the trial court erred by concluding that our Legislature intended to give its approval to marriage ceremonies performed by ministers of the Universal Life Church, even if they were performed *after* 3 July 1981, because we believe the express terms of the statute validated only those otherwise voidable marriages solemnized by a minister of the Universal Life Church before 3 July 1981. *See Meza v. Div. of Soc. Servs.*, 364 N.C. 61, 66, 692 S.E.2d 96, 100 (2010) (stating that "[w]hen the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required").

Indeed, in *Fulton v. Vickery*, this Court described N.C. Gen. Stat. § 51-1.1 as a "curative statute." 73 N.C. App. at 385, 326 S.E.2d at 357. In other words, by limiting the scope of the statute only to those marriages performed prior to 3 July 1981, the Legislature intended to provide relief to any "innocent" couple whose marital status was suddenly put in doubt by the *Lynch* decision. However, had the Legislature intended to validate otherwise voidable marriages solemnized by the Universal Life

Church *for all time*, it could have easily done so.[5]

In this case, since the trial court found that the parties were married by Hawk Littlejohn on a date *after* 3 July 1981, the curative effect of N.C. Gen. Stat. § 51-1.1 would not apply. Accordingly, the parties' marriage – as based on the 1989 ceremony – was voidable, and subject to attack in a direct proceeding pursuant to N.C. Gen. Stat. § 50-4.

## 2. Judicial Estoppel

Defendant argues that the trial court erred by concluding that, even if the 1989 ceremony was voidable, Defendant was judicially estopped from contesting its validity. We agree.

Our Supreme Court has stated that three factors are to be considered in applying the doctrine of judicial estoppel: (1) whether a party's position in a legal proceeding is clearly inconsistent with an earlier position taken in a legal proceeding; (2) whether the party succeeded in persuading a court to accept the party's earlier position; and (3) whether the party seeking to assert the inconsistent position would derive some unfair

---

[5] There is no evidence in the record regarding the current criteria for ordination in the Universal Life Church; and, accordingly, we express no opinion about marriages that might have been solemnized by other Universal Life Church ministers since *Lynch*. Further, we express no opinion regarding the voidability of marriages solemnized by a Universal Life Church minister under the current version of N.C. Gen. Stat. § 51-1.

advantage or impose an unfair detriment on the opposing party. *Whitacre v. BioSignia, Inc.*, 358 N.C. 1, 29, 591 S.E.2d 870, 888-89 (2004).

In this case, the trial court's order does not contain any finding that Defendant took the position in this or any other judicial proceeding that the 1989 ceremony was valid. Rather, the record reflects that Defendant *denied* in his initial pleading in this action Plaintiff's allegation that they were married in 1989. Accordingly, we hold that the trial court erred by concluding that Defendant was judicially estopped from contesting the validity of the 1989 ceremony.

### 3. Equitable Estoppel

Defendant argues that the trial court erred by concluding that he is equitably estopped from challenging the validity of the 1989 ceremony. Specifically, he argues that Plaintiff is barred from asserting equitable estoppel because she has "unclean hands" by having participated in the 1989 ceremony. Plaintiff, on the other hand, argues that estoppel[6] does apply in this case. In

---

[6] The trial court concluded that Defendant was "equitably estopped" from challenging the validity of the 1989 ceremony. In the cases cited by the parties, the reviewing courts employ both the doctrines of "equitable estoppel" and "quasi-estoppel." Our Supreme Court has described "quasi-estoppel" as a "branch of equitable estoppel" with the key distinction being that the former "may operate without detrimental reliance on the part of the party

support of their respective positions, each party has cited opinions from this Court and our Supreme Court which address the propriety of estopping a party from challenging the validity of a void or voidable marriage. We have carefully reviewed these cases and believe that the trial court correctly concluded that Defendant was equitably estopped from challenging the validity of the 1989 ceremony.

Whether principles of estoppel apply "turn[s] on the particular facts of each case." *Mayer*, 66 N.C. App. at 535, 311 S.E.2d at 668. The application of estoppel in divorce actions in North Carolina can be illustrated in three cases decided by this Court, *Hurston v. Hurston*, 179 N.C. App. 809, 635 S.E.2d 451 (2006); *Redfern v. Redfern*, 49 N.C. App. 94, 270 S.E.2d 606 (1980); and *Mayer*, *supra*, each of which involved (1) a wife seeking post-marriage support from her husband; (2) the husband seeking to avoid such obligation by asserting that the marriage was void based on the fact that either he or his putative wife had failed to obtain a valid divorce from a prior marriage; and (3) the wife contending

---

invoking the estoppel." *Whitacre*, 358 N.C. at 18, 591 S.E.2d at 882. We believe that the distinction is insignificant in the present case and believe that the cases considering either doctrine are helpful in our resolution of this issue. *See Mayer v. Mayer*, 66 N.C. App. 522, 532-36, 311 S.E.2d 659, 666-69 (1984) (relying on analyses in cases applying "equitable estoppel" though applying "quasi-estoppel" principles).

that her putative husband was estopped from contesting the validity of their marriage.  We compare each of these decisions below.

*Hurston*, a case relied upon by Defendant, involved facts at one extreme of the spectrum.  There, it was the wife who had been previously married and who had obtained an invalid Dominican Republic divorce.  Therefore, we held in *Hurston* that the wife could *not* assert estoppel because she had "unclean hands," reasoning that though her putative husband "might have been negligent" by not ever questioning during the marriage the validity of the wife's first divorce, "it was the [wife] who did not obtain the valid divorce decree before attempting to enter into another marriage[,]" describing her as being "culpably negligent." *Hurston*, 179 N.C. App. at 815, 635 S.E.2d at 454.  Accordingly, we held that the husband *was not* equitably estopped from contesting the validity of the marriage.

*Redfern* involved facts on the other extreme of the spectrum.  Specifically, in *Redfern*, it was the husband – and not the wife - who had been previously married and had entered the second marriage before, unbeknownst to his putative wife, the divorce decree from his first marriage had been signed.  This Court determined that the husband was culpably negligent in failing to obtain a signed divorce decree; and, therefore, he was estopped from contesting

the validity of the second marriage as his defense to avoid paying support to his putative wife. *Redfern*, 49 N.C. App. at 97, 270 S.E.2d 608-09.

The facts in *Mayer* fall between the extremes of *Hurston* and *Redfern*. Like the wife in *Hurston*, the wife in *Mayer* had obtained an invalid Dominican Republic divorce in an attempt to end her first marriage. However, unlike the putative second husband in *Hurston*, the putative second husband in *Mayer* was involved in helping his wife obtain the invalid Dominican divorce from her first husband. Specifically, the putative second husband had insisted that his wife obtain the Dominican divorce and had accompanied her there to help her obtain the divorce. The putative second husband, nonetheless, argued that his wife should not be able to assert estoppel since "the equities in this case weigh no more heavily for [the wife] than for him since [*inter alia*] she and he are *in pari delicto* [in that she participated equally with him to obtain the Dominican divorce]." *Mayer*, 66 N.C. App. at 531, 311 S.E.2d at 666. This Court concluded that even though no children had been born to the marriage and though the parties had not been married for that long, the scales of equity still tipped towards allowing the wife to assert estoppel to bar her putative second husband's defense to her claim for spousal support. *Id.* at

66 N.C. App. at 535, 311 S.E.2d at 668. Specifically, this Court stated that to allow a party to a marriage to challenge the validity of that marriage where he was actively involved in obtaining an invalid divorce for his putative spouse and which was relied upon by his putative spouse would cause "matrimonial uncertainty." *Id.* We note that in *Taylor v. Taylor*, our Supreme Court cited our analysis in *Mayer* with approval, quoting our reasoning that "'in spite of the criticism that the application of a quasi-estoppel doctrine circumvents a state's divorce law, it would be even more inimical to our law and to our public policy to permit [the husband] to avoid his marital obligations by acting inconsistently with his prior conduct." 321 N.C. 244, 250-51, 362 S.E.2d 542, 546-47 (1987) (citation omitted) (alteration in original).

We believe that the facts in the present case – as found by the trial court in the 2007 order - are most similar to the facts in *Mayer*. Specifically, the findings suggest that both Plaintiff and Defendant were equally negligent in relying on Hawk Littlejohn's credentials. Accordingly, we believe that the trial court correctly applied the law in concluding that Defendant was equitably estopped from challenging the validity of the 1989 ceremony.

The scales of equity might have tipped towards Defendant had the evidence shown that Plaintiff had actually known at the time of the 1989 ceremony that Hawk Littlejohn was not authorized to solemnize a North Carolina marriage *or* that she had misrepresented to Defendant prior to the 1989 ceremony that she had engaged in some due diligence to determine the validity of Hawk Littlejohn's credentials where she, in fact, had not done so. Further, had Plaintiff not agreed to participate in the 2001 ceremony, the scales of equity would have swayed against her, at least with respect to any benefit she seeks in this action that relates to the period of the marriage occurring after she had learned in 2001 that her marriage was voidable. However, there is no evidence in the record indicating that Plaintiff was any more culpable than the wife in *Mayer*. We note that Defendant has pled allegations that might enhance Plaintiff's culpability, including allegations about her expertise in Native American culture and her desire and insistence that she and Defendant participate in the traditional Cherokee ceremony officiated by Hawk Littlejohn. However, there is nothing in the Rule 9(c) statement indicating that any testimony or other evidence was presented to the trial court regarding these allegations. Rather, the Rule 9(c) statement simply recites that the parties both testified and that the testimonial evidence

supported many of the trial court's findings in the 2007 order.

Accordingly, we affirm the trial court's determination that the date of marriage for purposes of this action is 15 October 1989. Further, because we hold that the trial court did not err in concluding that 15 October 1989 was the date of marriage for all matters related to this action, we necessarily hold that the trial court did not err in basing all subsequent orders on that date of marriage.

### III. Dependent Spouse Determination

In his final argument, Defendant contends that, in its 31 March 2008 order, the trial court erred in making its conclusion of law 2, which states as follows:

> Taking into account the income and expenses of the parties living as [a] family unit for the several months prior [to] the separation of the parties, . . . Plaintiff is without sufficient means to maintain her accustomed standard of living and . . . Plaintiff is, therefore, a dependent spouse in that she is actually substantially dependent on . . . Defendant for her support as of the date of separation. Further, given that . . . Plaintiff's income is not sufficient to meet her monthly expenses, . . . Plaintiff is substantially in need of maintenance and support.

Defendant, however, makes no argument in his brief that any specific findings in the order are not supported by competent evidence. Defendant only nonspecifically argues that "the trial

court erred in its legal conclusion #2 that . . . [P]laintiff is 'actually substantially dependent on . . . Defendant for her support as of the date of separation,' . . . as that conclusion was based on a finding that is not supported by the evidence." "Findings of fact to which no error is assigned 'are presumed to be supported by competent evidence and are binding on appeal.'" *Pascoe v. Pascoe*, 183 N.C. App. 648, 650, 645 S.E.2d 156, 157 (2007) (citation omitted). This Court has held that when an appellant, as here, fails to argue specifically in his brief that contested findings of fact were unsupported by the evidence, any such argument is abandoned. *Peters v. Pennington*, 210 N.C. App. 1, 16, 707 S.E.2d 724, 735 (2011) (citation omitted). Since Defendant made no argument as to which, if any, of the findings of fact in the trial court's 31 March 2008 order were unsupported, "this Court is therefore bound to accept as true the information therein." *Pascoe*, 183 N.C. App. at 651, 645 S.E.2d at 158 (citation omitted). We have nevertheless reviewed the relevant findings of fact and conclude that they are supported by competent record evidence and are binding on appeal. Therefore, we hold that the trial court did not err in finding Plaintiff to be actually substantially dependent on Defendant, and Defendant's argument to the contrary is without merit.

AFFIRMED.

Judge DAVIS concurs.

Judge McGEE concurs in result with separate opinion.

NO. COA12-399-2

NORTH CAROLINA COURT OF APPEALS

Filed: 18 February 2014

BARBARA R. DUNCAN
      Plaintiff-Appellee,

      v.                                    Macon County
                                            No. 05 CVD 338
JOHN H. DUNCAN,
      Defendant-Appellant.


      McGEE, Judge, concurring in result with separate opinion.


      I concur in Section II A. 3., Equitable Estoppel, and in Section III, Dependent Spouse Determination, of the majority's opinion.  I agree that the trial court did not err in ruling that Defendant was equitably estopped from denying 15 October 1989 as the date of marriage.  I write separately because I believe the remainder of Section II of the majority opinion is dicta, which unnecessarily, and perhaps erroneously, addresses issues better left to future panels of this Court, should these issues again arise.

I.

      Though I do not believe we need to, or should, address any issues beyond equitable estoppel in Section II, I am concerned with the statement of the majority that "Defendant met his high

burden [of] show[ing] that Hawk Littlejohn was not authorized under the applicable version of N.C. Gen. Stat. § 51-1 to solemnize the 1989 ceremony." I am not at all certain Defendant met his burden in this regard, and would much prefer we not address this issue in dicta.

Initially, pursuant to N.C. Gen. Stat. § 51-1, a marriage ceremony results in a valid marriage if, *inter alia*, it is conducted "[i]n the presence of a minister authorized by a church[.]" N.C. Gen. Stat. § 51-1 (2013). Though I tend to agree with the majority opinion that Hawk Littlejohn's association with the Universal Life Church does not satisfy the requirements of N.C.G.S. § 51-1 in light of precedent of this Court and our Supreme Court, the majority fails to consider Hawk Littlejohn's uncontested status as a Cherokee Medicine Man.

The trial court made the following relevant findings of fact in its 15 October 2007 order:

> 10. That, on . . . October 15th, 1989, . . . Plaintiff and Defendant participated in a marriage ceremony performed by Hawk Littlejohn, a Cherokee Medicine Man;
>
> . . . .
>
> 12. That the ceremony was attended by friends and family, had several sweat lodges, there was an exchange of corn and blankets, bagpipes were played and the exchanging of gold wedding bands took place. Further, . . . Defendant

wore a kilt for the ceremony;

. . . .

27. That the parties in this case expressed their solemn intent to marry at a traditional Cherokee ceremony attended by family and friends[.]

. . . .

29. That . . . Defendant failed to produce any evidence or offer controlling law that Hawk Littlejohn was not . . . "authorized by his church" to perform weddings in accordance with the traditions of the Cherokee Indian Nation or in accordance with N.C. Gen. Stat. Sec. 51-1.

Defendant does not challenge the portion of finding of fact twenty-nine that states: "Defendant failed to produce any evidence or offer controlling law that Hawk Littlejohn was not . . . 'authorized by his church' to perform weddings in accordance with the traditions of the Cherokee Indian Nation or in accordance with N.C. Gen. Stat. Sec. 51-1." Because Defendant does not challenge this portion of finding of fact twenty-nine, it is binding on appeal. *Bethea v. Bethea*, 43 N.C. App. 372, 374, 258 S.E.2d 796, 798 (1979). Further, Defendant does not argue on appeal that Hawk Littlejohn, as a Cherokee Medicine Man, was not authorized to perform weddings. Having failed to challenge this finding, or the conclusions based upon it, Defendant has abandoned any such challenge. N.C.R. App. P. 28(b)(6) ("Assignments of error

not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."); *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 200, 657 S.E.2d 361, 367 (2008).

Because Defendant has failed to challenge the validity of the 1989 marriage based on one of the grounds found by the trial court in support of its ruling, Defendant has abandoned that challenge. I therefore disagree with the majority opinion's statement that "Defendant met his high burden [of] show[ing] that Hawk Littlejohn was not authorized under the applicable version of N.C. Gen. Stat. § 51-1 to solemnize the 1989 ceremony" on this ground as well.

I would also note that the issue of whether Hawk Littlejohn, or another Native American religious figure, could validly perform marriages pursuant to N.C.G.S. § 51-1 before it's amendment on 1 October 2001 has never been answered by our appellate courts. In dissenting from the majority opinion in *Pickard*, *supra*, that a marriage performed by Hawk Littlejohn in 1991 was valid through the application of judicial estoppel, the dissenting judge made the argument that the marriage was valid as performed, due in part to Hawk Littlejohn's status as a Cherokee Medicine Man. *Pickard*, 176 N.C. App. at 203-04, 625 S.E.2d at 876. Though the dissent in *Pickard* does not constitute controlling law, the argument included

therein has never been directly addressed in North Carolina, and the majority does not address it here, though the trial court in this matter ruled the 1989 marriage valid, in part, for similar reasons.

## II.

Finally, though not an issue argued on this appeal, I disagree with the definitive statement of the majority declaring the 1989 ceremony invalid, and thus the resulting marriage "voidable," because I recognize a possibility, as of yet undecided by any appellate court of this state, that the 1989 ceremony resulted in a valid marriage by action of statute.

Our General Assembly, on 10 May 2001, approved legislation to amend N.C.G.S. § 51-1 and other statutes ("the Act"). The Act was titled, in part: "MARRIAGE—LICENSING—SOLEMNIZATION[:] AN ACT TO AMEND THE MARRIAGE STATUTES TO BROADEN THE LIST OF PERSONS AUTHORIZED TO SOLEMNIZE MARRIAGES; *TO VALIDATE A MARRIAGE LICENSED AND SOLEMNIZED BY A FEDERALLY RECOGNIZED INDIAN TRIBE OR NATION*[.]" 2001 North Carolina Laws S.L. 2001-62 (H.B. 142) (emphasis added). By Section 1 of H.B. 142, N.C.G.S. § 51-1 was amended in part to read:

> A valid and sufficient marriage is created by the consent of a male and female person who may lawfully marry, presently to take each other as husband and wife, freely, seriously

and plainly expressed by each in the presence of the other, either:

(1) a. In the presence of an ordained minister of any religious denomination, a minister authorized by a church, or a magistrate; and

b. With the consequent declaration by the minister or magistrate that the persons are husband and wife; or

(2) *In accordance with any mode of solemnization recognized by any religious denomination, or federally or State recognized Indian Nation or Tribe.*

N.C.G.S. § 51-1 (emphasis added).

The relevant enacting language of H.B. 142 is as follows: "[Section 1] of this act becomes effective October 1, 2001." 2001 North Carolina Laws S.L. 2001-62 (H.B. 142), Section 18. Because the Act was enacted in part to *validate* marriages performed in accordance with recognized Native American nations or tribes, and because there is no temporal restriction in the enacting language[7], I would not declare the 1989 marriage in this matter invalid and voidable, and would not imply that other marriage ceremonies performed in a similar manner before 1 October 2001, are invalid and therefore voidable.

---

[7] For example, the General Assembly could have used language similar to "The remainder of this act applies to marriage ceremonies performed *on or after* October 1, 2001," but did not.

I therefore limit my concurrence in Section II to the following: Assuming, *arguendo*, the 1989 marriage ceremony was invalid, and the resulting marriage was voidable, Defendant is equitably estopped from denying the validity of that marriage.