Crescent Foods, Inc. v. Evason Pharmacies, Inc., 2016 NCBC 74.

STATE OF NORTH CAROLINA

COUNTY OF WAYNE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1852

CRESCENT FOODS, INC.,
              Plaintiff,

v.

EVASON PHARMACIES, INC.,
              Defendant.

)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER ON
PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Plaintiff Crescent Foods, Inc.'s Motion to Dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)") ("Plaintiff's Motion to Dismiss").

THE COURT, having considered Plaintiff's Motion to Dismiss,[1] the briefs in support of and opposition to Plaintiff's Motion to Dismiss, the arguments of counsel, and other appropriate matters of record, concludes that Plaintiff's Motion to Dismiss should be GRANTED, in part, and DENIED, in part, for the reasons below.

*Everett, Womble & Lawrence, LLP by Ronald T. Lawrence, II, Esq., for Plaintiff.*

---

[1] Plaintiff alleged certain grounds for dismissal of Defendant's counterclaims in the Motion to Dismiss about which it did not make argument in its brief or at the hearing. Accordingly, the Court does not address those grounds for dismissal that Plaintiff has not included in its arguments.

*The Law Office of John T. Benjamin, Jr., P.A. by John T. Benjamin, Jr., Esq. and Paula M. Shearon, Esq., for Defendant.*

McGuire, Judge.

FACTUAL AND PROCEDURAL HISTORY

1.    Plaintiff Crescent Foods, Inc. ("Plaintiff") is a North Carolina corporation that owns and operates Piggly Wiggly grocery stores, including stores in Mount Olive and Faison, North Carolina. (Countercl. ¶¶ 9, 11.) Defendant Evason Pharmacies, Inc. ("Defendant") is also a North Carolina corporation, and is in the business of operating and managing pharmacies. On October 1, 2001, Plaintiff and Defendant entered into a Management Agreement ("Management Agreement" or "Agreement"), pursuant to which Defendant would manage Plaintiff's pharmacies in the Faison and Mount Olive stores. (*Id.* ¶ 11.) The Management Agreement expired by its own terms on April 30, 2013, and was not renewed. (*Id.* ¶ 12.)

2.    The parties' duties in undertaking this venture were outlined in the Management Agreement. The Management Agreement provided that Defendant's duties included "managing the [pharmacies], including supervision of all employees of the Store providing services thereto" and the "ordering of all prescription drugs and health and beauty care products for the [pharmacies]." (Management Agreement ¶ 3.)  Plaintiff was required to provide to Defendant "at no charge," *inter alia*, the following: "the facilities and fixtures . . . necessary to operate the [pharmacies]"; "computer software required for pharmacy operations"; and, "computer equipment, printer[s], copier[s], and facsimile machine[s]." (*Id.* ¶ 4.) The Management Agreement

also provided that Plaintiff "shall employ or engage the pharmacists and other staff . . . necessary to operate the [pharmacies]" and that "[a]ny such employees shall be considered employees of the [Plaintiff] and shall participate in all employee benefits offered by the [Plaintiff] to its employees." (*Id.*)

3. The Management Agreement provided the following regarding Defendant's compensation for its services:

> Compensation: As compensation for [Defendant's] services hereunder, [Defendant] shall be entitled to fifty percent (50%) of the Gross Profit (as defined hereinbelow) from the [pharmacies'] prescription sales calculated on a quarterly basis. For purposes of this Agreement, Gross Profit shall be calculated using the cash basis method of accounting and shall mean total gross [ ] prescription sales less the following expenses: cost of goods sold, supplies, sales taxes, and salaries, compensation (including employer contributions for employment taxes) and employee fringe benefits (such as [Plaintiff's] insurance plan and retirement plan) payable to any pharmacists and other employees required to operate the [pharmacies].

(*Id.* ¶ 5.)

4. Defendant "provided funds to the Pharmacies for compensation and benefits of employees, purchase of inventory and other equipment, assets, and supplies of the Pharmacies, and monthly rent . . ." and "was not reimbursed" for these expenses through the calculation of Gross Profits. (Countercl. ¶¶ 15, 16, 44–46.) Defendant also alleges that Plaintiff received "refunds for unused prescription medications," but did not account for these refunds in calculating Gross Profits. (*Id.* ¶ 17.) Additionally, Defendant alleges that it paid half the cost of acquiring the files

and inventory of a "Glenn-Martin Pharmacy in Mount Olive, NC," and that it was not required to do so under the Management Agreement. (*Id.* ¶ 47.)

5. Defendant was a member of, and owned stock in, North Carolina Mutual Drug Company ("Mutual Drug"). (*Id.* ¶ 20.) As a stockholder, Defendant was able to buy the prescription medications for the pharmacies from Mutual Drug at a preferred, or discounted, price. Defendant also received monthly and annual dividend payments from Mutual Drug. (*Id.*) In years in which Mutual Drug had excess earnings, it paid year-end dividends to stockholders who owned a sufficient amount of stock based on the net purchases of goods from Mutual Drug by the stockholder during the year. (*Id.* ¶¶ 20–21.) Defendant alleges that "Plaintiff was aware of these year-end dividends and that the same were payable to Defendant." (*Id.* ¶ 22.) Despite this fact, "[s]ubsequent to the expiration of the Management Agreement, Plaintiff received, and wrongfully retained, certain year-end dividend payments made payable to and belonging to the Defendant in the amount of $42,498.35." (*Id.* ¶ 23.)

6. On October 27, 2015, Plaintiff filed this lawsuit in the Superior Court of Wayne County. The Complaint alleged claims against Defendant including breach of contract, breach of fiduciary duty, constructive fraud, actual fraud, and unfair and deceptive trade practices.

7. On November 25, 2015, Defendant filed a Notice of Designation to the North Carolina Business Court. On December 2, 2015, the Chief Justice of the North Carolina Supreme Court issued an Order, pursuant to G.S. § 7A-45.4(b), designating

this case as a mandatory complex business case, and the case was assigned to the undersigned.

8.     On January 15, 2016, Defendant filed its Motions to Dismiss, Answer, Affirmative Defenses, and Counterclaims. Defendant alleged counterclaims against Plaintiff requesting an accounting ("Counterclaim One"), and for conversion ("Counterclaim Two"), unfair and deceptive trade practices under G.S. § 75-1.1 ("Counterclaim Three"), punitive damages ("Counterclaim Four"), and recoupment ("Counterclaim Five").

9.     On March 7, 2016, Plaintiff filed its Motions to Dismiss, Reply and Response to Counterclaims, and Affirmative Defenses. Plaintiff moves to dismiss Defendant's counterclaims in their entirety pursuant to Rule 12(b)(6) contending that some of Defendant's claims are barred by statutes of limitation, are barred by the terms of the Management Agreement, or otherwise fail as a matter of law. The Court held a hearing on Plaintiff's Motion to Dismiss, and it is now ripe for determination.

DISCUSSION

10.     Plaintiff moves to dismiss Defendant's counterclaims under Rule 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must determine "whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true." *Tuwamo v. Tuwamo*, 2016 N.C. App. LEXIS 769, at *9–10 (N.C. Ct. App. 2016) (quoting *Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.*, 231 N.C. App. 70, 74, 752 S.E.2d 661, 663 (2013)). The Court

is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Strickland v. Hedrick*, 194 N.C. App. 1, 20, 669 S.E.2d 61, 73 (2008). A complaint—or in this case, a counterclaim—can be dismissed under Rule 12(b)(6): "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Mileski v. McConville*, 199 N.C. App. 267, 269, 681 S.E.2d 515, 517 (2009) (citing *Oates v. Jag, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985)). Additionally, "[a] statute of limitations can be the basis for dismissal on a Rule 12(b)(6) motion if the face of the complaint discloses that plaintiff's claim is so barred." *Reunion Land Co. v. Village of Marvin*, 129 N.C. App. 249, 250, 497 S.E.2d 446, 447 (1998).

### a. Counterclaim One — Accounting.

11. Defendant's first counterclaim is for an accounting. (Countercl. ¶¶ 13–18.) Defendant alleges that it paid certain expenses associated with running Plaintiff's pharmacies that should have been paid by Plaintiff under the terms of the Management Agreement. Defendant also alleges that Plaintiff failed to account for refunds it received as a result of unused prescription drugs returned by the pharmacies. (*Id.* ¶ 17.) Defendant claims the payments and refunds should have been "taken into account when calculating the net profit of the Pharmacies and compensation of the Defendant" and "requests a full accounting of the profits of the Pharmacies . . . and compensation due to Defendant." (*Id.* ¶¶ 14, 18.)

12.    "An accounting is an equitable remedy, usually sought pursuant to claims of constructive fraud or breach of fiduciary duty." *Starling v. Alexander Place Townhome Ass'n*, 2010 N.C. App. LEXIS 488, at *10 (N.C. Ct. App. Mar. 16, 2010) (citing *Toomer v. Branch Banking & Tr. Co.,* 171 N.C. App. 58, 70, 614 S.E.2d 328, 337 (2005)). In its brief, Defendant concedes that its request for accounting is based on Plaintiff's allegation in the Complaint that a fiduciary duty existed between Plaintiff and Defendant. (Def.'s Br. Opp. Pl.'s Mot. Dismiss 12–13.) Defendant acknowledges that if the Court concludes there was no fiduciary duty between the parties, then its claim for accounting should be dismissed. (*Id.*) In its Opinion and Order on Defendant's Motion to Dismiss, the Court concluded that Plaintiff had failed to allege the existence of a fiduciary relationship between Plaintiff and Defendant and dismissed Plaintiff's claims for breach of fiduciary duty and constructive fraud. Accordingly, the Court concludes that Plaintiff's Motion to Dismiss Defendant's Counterclaim One for accounting should be GRANTED.

b.  *Counterclaim Two — Conversion.*

13.    Defendant's second counterclaim is for conversion. (Countercl. ¶¶ 19–27.) Defendant alleges that Plaintiff wrongfully retained a dividend check in the amount of $42,498.35 sent to Defendant by Mutual Drug after expiration of the Management Agreement.[2] (Countercl. ¶ 23.) Defendant requested that Plaintiff turn over the funds, but Plaintiff refused. (*Id.* ¶ 34.) Plaintiff argues that the payment

---

[2] Although not alleged, and neither party has provided an explanation in its briefing, the check apparently was delivered to one of Plaintiff's stores in which Defendant had managed the pharmacies.

from Mutual Drug was not a dividend but instead a "rebate" on prescription drugs purchased for Plaintiff's pharmacies that Plaintiff is entitled to keep.[3] (Pl.'s Br. Supp. Mot. Dismiss 7.)

14.     Conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Lake Mary, L.P. v. Johnston*, 145 N.C. App. 525, 531, 551 S.E.2d 546, 552 (2001). Conversion does not occur until some act is done which denies the complainant dominion over or rights in the property. *Id.* at 532, 551 S.E.2d at 552. Under North Carolina law, there are two essential elements that a complaint for conversion must contain. There must be (1) ownership in the plaintiff and (2) wrongful conversion by the defendant. *Id.*

15.     Defendant has alleged the essential elements of conversion. First, with regards to ownership, Defendant alleges that it was the rightful owner of the funds withheld by Plaintiff because the funds were year-end dividends issued to Defendant as a shareholder of Mutual Drug. Second, Defendant alleges that wrongful conversion occurred when Plaintiff retained the dividend payments for its own benefit which deprived Defendant of use and benefit of the same. (Countercl. ¶¶ 23–25.) Taken as true, such an act by the Plaintiff denies the Defendant dominion over, and rights to, its dividend payments.

---

[3] Plaintiff also contends that Defendant cannot allege causes of action for conversion and recoupment because they are only requests for a "set-off" against any amounts that may be awarded to Plaintiff.  (Pl.'s Br. Supp. Mot. Dismiss 7.) The Court addresses this argument infra in the discussion of the counterclaim for recoupment.

16. Plaintiff's argument that the payment from Mutual Drug was a rebate that was rightfully payable to Plaintiff is a fact issue that cannot be resolved on a motion pursuant to Rule 12(b)(6). The Court concludes that dismissal of the Defendant's counterclaim for conversion on this basis is not proper at this stage of the litigation and Plaintiff's Motion to Dismiss Defendant's Counterclaim Two for conversion should be DENIED.

*c. Counterclaim Three — Unfair and Deceptive Trade Practices.*

17. As its third counterclaim, Defendant attempts to repackage its conversion claim as a claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act, G.S. § 75-1.1 (UDTPA). (Countercl. ¶¶ 28–34.) Defendant alleges that "Plaintiff's actions in knowingly retaining year-end dividends payable to Defendant" was an "unfair and deceptive act." (Countercl. ¶ 30.) Plaintiff argues that Defendant's UDTPA claim "amounts to either a simple conversion claim or a breach of the parties' agreement." (Pl.'s Br. Supp. Mot. Dismiss 8.)

18. To state a claim for violation of the UDTPA, Defendant must allege that: (1) Plaintiff committed an unfair or deceptive act or practice; (2) that the action was in or affecting commerce; and (3) Plaintiff's acts proximately caused injury to Defendant. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Huff v. Autos Unlimited*, 124 N.C. App. 410, 413, 477 S.E.2d 86, 88 (1996). "A practice is deceptive if it has the capacity or tendency to deceive; proof of

actual deception is not required." *Id.* Whether a trade practice is unfair or deceptive depends upon the facts of each case and their impact on the parties. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981).

19.     Defendants contend that a claim for conversion can serve as a basis for a claim of unfair and deceptive trade practices. *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 83, 665 S.E.2d 478, 487 (N.C. Ct. App. 2008) (recognizing that "acts of conversion may constitute unfair and deceptive trade practices"); *Love v. Pressley*, 34 N.C. App. 503, 515 – 17, 239 S.E.2d 574, 582 – 83 (1977) (same). Generally, however, a claim for conversion must be accompanied by allegations of "additional egregious, immoral, oppressive, unscrupulous, or substantially injurious acts" in order "to impose the heightened penalty of unfair and deceptive trade practices." *Bartlett Milling Co.,* 192 N.C. App. at 83, 665 S.E.2d at 487. Defendant has alleged only that Plaintiff received and has retained a payment from Mutual Drug to which Defendant alleges it is entitled. There is no alleged deception; Plaintiff has conceded that it received the payment and had it in its possession. Defendant alleges no other facts suggesting that Plaintiff has otherwise engaged in "egregious, immoral, oppressive, [or] unscrupulous" conduct. *Id.* The Court concludes that Plaintiff's Motion to Dismiss Defendant's counterclaim for unfair and deceptive trade practice should be GRANTED.

### d. Counterclaim Four — Punitive Damages.

20.     Plaintiff makes a claim for punitive damages as a distinct cause of action (Countercl. ¶¶ 35–39), and also prays for punitive damages in its prayer for relief.

(Countercl. p. 26.) Plaintiff contends only that Defendant's claim for punitive damages "rests upon the claims for unfair and deceptive trade practices and conversion," and should be dismissed if the Court dismisses the claims for unfair and deceptive trade practices and conversion. (Pl.'s Br. Supp. Mot. Dismiss 9.)

21.     To prevail on a claim for punitive damages, Plaintiff must succeed on a claim for compensatory damages, and prove by clear and convincing evidence that one or more of the following aggravating factors are present: (a) fraud, (b) malice, or (c) willful or wanton conduct." *See* G.S. § 1D-15; *Sellers v. Morton,* 191 N.C. App. 75, 85, 661 S.E.2d 915, 923 (2008). The Court has denied Plaintiff's motion to dismiss Defendant's counterclaim for conversion, which may entitle Defendant to an award of compensatory damages. Defendant also has alleged that "Plaintiff was aware that the dividends retained by the Plaintiff were property of the Defendant and Plaintiff disregarded the rights of the Defendant and retained the same *with willful and wanton disregard of the rights of the Defendant.*" (Countercl. ¶ 38 (emphasis added).) Since the Court has denied Plaintiff's motion to dismiss the claim for conversion, Plaintiff's Motion to Dismiss Defendant's claim for punitive damages must be DENIED at this stage.

e.  *Counterclaim Five – Recoupment.*

22.     As its fifth counterclaim, Defendant alleges a claim for recoupment. (Countercl. ¶¶ 40–53.) Defendant paid various expenses for the pharmacies and purchased equipment and fixtures for the pharmacies. Defendant alleges that these expenses and purchases were Plaintiff's responsibility under the terms of the

Management Agreement, and that Defendant was never reimbursed for the expenses or purchases. (*Id.* ¶¶ 44–47.) In addition, Plaintiff received refunds for unused and returned prescription drugs, but did not account for the refunds in calculating the Gross Profits of the pharmacies. (*Id.* ¶ 49.) If the Court enters judgment for Plaintiff, Defendant seeks a recoupment of these amounts. (*Id.* ¶ 53.) Plaintiff argues that Defendant's counterclaim for recoupment should be dismissed because (i) it was not timely filed within the applicable statute of limitations, (ii) it is merely a claim seeking set-off[4] against any recovery awarded to Plaintiff, and therefore, is not an independent cause of action, and (iii) it is barred by Plaintiff's affirmative equitable defenses of laches, waiver, and estoppel.[5] (Pl.'s Br. Supp. Mot. Dismiss 3–7.) The Court will address these arguments in turn.

23. Plaintiff contends that Defendant's recoupment counterclaim is "couched in allegations that the Plaintiff breached its contract with the Defendant . . ." and is therefore subject to a three-year statute of limitation. (*Id.* at 4.) Specifically, Plaintiff argues that since Defendant did not file its counterclaims until January 15, 2016, "any accountings occurring prior to January 15, 2012 would be barred by the statute of limitations."[6] (*Id.* at 5.) With regard to the application of statutes of limitation to a claim for recoupment, the Honorable Louis A. Bledsoe, III, of this

---

[4] Defendant also has raised an affirmative defense of "set-off" in its Answer. (Def.'s Answer, Eighth Affirmative Defense.)

[5] Plaintiff alleged laches, estoppel, and waiver as affirmative defenses in its Answer to Defendant's counterclaims.

[6] The Court assumes that Plaintiff intended to argue that claims arising before January 15, 2013, and not 2012, are barred.

Court, recently recognized that the terms "set-off" and "recoupment" are distinct remedies to which statutes of limitations apply differently:

> [T]he terms 'offset,' or 'set-off' as it is also known, and 'recoupment' are distinct remedies with distinct legal definitions. Set-off is defined as "[a] defendant's counterdemand against the plaintiff, *arising out of a transaction independent of the plaintiff's claim*." As a general proposition, a claim for set-off, whether asserted as an affirmative defense or counterclaim, is subject to the applicable statute of limitations. Recoupment is defined as a "[r]eduction of a plaintiff's damages because of a demand by the defendant *arising out of the same transaction*." In contrast to set-off, a claim for recoupment is not subject to the otherwise applicable limitations period. *Ken-Lu Enters., Inc. v. Neal*, 29 N.C. App. 78, 81, 223 S.E.2d 831, 833 (1976) ("[T]he borrowers' counterclaim is in the nature of setoff, not recoupment. As such, it is subject to the statute of limitations.").

*In re S. Eye Ctr.–Pending Matters*, 2016 NCBC LEXIS 59, at *21 (N.C. Super. Ct. 2016) (internal citations omitted). Accordingly, the Court concludes that Defendant's recoupment counterclaim is not subject to a statute of limitations. *Id.* at *21–22 ("Although all of Dr. Matthews' Amended Counterclaims are denominated as claims for set-off, the Court concludes that his counterclaims for breach of the Employment Agreement and violation of the Wage and Hour Act are in the nature of recoupment because they arise from the same transaction as CCSEA's claims—i.e., the employment relationship between CCSEA and Dr. Matthews. Accordingly, the Court concludes that these counterclaims are not subject to a statute of limitations.").

24. Plaintiff's contention that Defendant's claim for recoupment is not an independent cause of action is incorrect. North Carolina has long recognized recoupment as a valid counterclaim under the proper circumstances, and Plaintiff's

argument on this front fails. *Fields v. Brown*, 160 N.C. 295, 298, 76 S.E. 8, 10 (1912); *Hurst, Miller, & Co. v. Everett & Everett*, 91 N.C. 399, 1884 N.C. LEXIS 85 (1884). Defendant has properly asserted a claim for recoupment because the claim arises from the same transaction as Plaintiff's claims, i.e., the obligations of each party pursuant to the Management Agreement.[7] *In re S. Eye Ctr.–Pending Matters*, 2016 NCBC LEXIS 59, at *21–22.

25. Finally, Plaintiff argues that Defendant's counterclaim for recoupment should be dismissed based on Plaintiff's equitable affirmative defenses of laches, estoppel, and waiver. The defense of laches is not appropriately considered on a motion to dismiss, but must be decided upon consideration of the evidence either at summary judgment or trial. *Harrell v. Powell*, 251 N.C. 636, 638–39, 112 S.E.2d 81, 83 (1960); *Solon Lodge Knights of Pythias Co. v. Iconic Lodge Free Ancient & Accepted Masons*, 245 N.C. 281, 289, 95 S.E.2d 921, 927 (1957); *see also Farley v. Holler*, 185 N.C. App. 130, 132–33, 647 S.E.2d 675, 677–78 (2007). Plaintiff's contention that the recoupment claim is barred by laches must fail.

26. Generally, the equitable estoppel and waiver defenses are fact intensive and ill-suited to resolution on a motion to dismiss. *Duncan v. Duncan*, 232 N.C. App.

---

[7] Plaintiff relies on the North Carolina Court of Appeal's decision in *Patrick v. Hurdle*, 16 N.C. App. 28, 190 S.E.2d 871 (1972), for the proposition that any claim entitling Defendant to a reduction of Plaintiff's recovery is not an independent cause of action and must be dismissed. (Pl.'s Br. Supp. Mot. Dismiss 4.) The Court finds Plaintiff's reliance misplaced. Under the present facts, the Defendant is seeking recoupment based on Plaintiff's underlying claims concerning the parties' obligations under the Management Agreement. In *Hurdle*, the defendant sought recoupment for amounts he claimed the plaintiff owed him based on matters unrelated to the plaintiff's claim. *Hurdle*, 16 N.C. App. at 36, 190 S.E.2d at 876. As explained above, those facts would support a claim for set-off rather than recoupment, but the facts of *Hurdle* are dissimilar to the present facts in that regard.

369, 377, 754 S.E.2d 451, 457 (2014) ("whether principles of estoppel apply turn[s] on the particular facts of each case"). Nevertheless, "[w]hen the complaint states a valid claim but also discloses an *unconditional affirmative defense* which defeats the asserted claim . . . the motion will be granted and the action dismissed." *Skinner v. E. F. Hutton & Co.*, 314 N.C. 267, 270, 333 S.E.2d 236, 238 (1985) (emphasis added). Dismissal based on an affirmative defense, however, "is proper [only] if the complaint on its face reveals an 'insurmountable bar' to recovery." *Johnson v. North Carolina DOT*, 107 N.C. App. 63, 67, 418 S.E.2d 700, 702 (1992).

27.    Plaintiff makes no argument regarding equitable estoppel in its brief, and the Court does not believe such a defense would apply to the facts surrounding Defendant's claim for recoupment. "The essential elements of equitable estoppel are: (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts." *Trillium Ridge Condo Ass'n v. Trillium Links & Vill., LLC*, 236 N.C. App. 478, 496, 764 S.E.2d 203, 216 (2014). In addition, "[t]he party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice." *Id.* Plaintiff does not contend that the expenses at issue were not Plaintiff's responsibility under the Management Agreement, or that it lacked knowledge of Defendant's payment of the expenses. Nor does Plaintiff explain how Defendant misrepresented or concealed any facts regarding its payment of the

expenses. The Court concludes that Plaintiff has failed to establish that Defendant should be equitably estopped from raising a claim for recoupment.

28.     Plaintiff's defense based on waiver bears closer inspection. Plaintiff contends that Defendant knew of its rights under the Agreement but never asserted a right to reimbursement from Plaintiff.  (Pl.'s Br. Supp. Mot. Dismiss 6.)  In addition, each quarter when the Gross Profits were distributed "Defendant accepted the amounts it received and never repudiated the transactions." (*Id.*) Plaintiff argues that these facts establish that Defendant voluntarily waived its rights to seek recoupment of the expenses it paid.

29.     Under North Carolina law, a party may waive the breach of a contractual provision or condition without consideration or estoppel if:

> (1) [t]he waiving party is the innocent, or nonbreaching party, and (2) [t]he breach does not involve total repudiation of the contract so that the nonbreaching party continues to receive some of the bargained-for consideration. . . and (3) [t]he innocent party is aware of the  breach, and (4) [t]he innocent party intentionally waives his right to excuse or repudiate his own performance by continuing to perform or accept the partial performance of the breaching party.

*Wheeler v. Wheeler*, 299 N.C. 633, 639–640, 263 S.E.2d 763, 766–67 (1980) (citation omitted).  "There must always be an intention to relinquish a right, advantage or benefit. The intention to waive may be expressed or implied from acts or conduct that naturally leads the other party to believe that the right has been intentionally given up." *Phoenix Ltd. P'ship v. Simpson*, 201 N.C. App. 493, 500, 688 S.E.2d 717, 722 (2009) (citations omitted).

> There can be no waiver unless so intended by one party, and so understood by the other, or one party has so acted as to mislead the other. It is a question of intent, which may be inferred from a party's conduct. Intent is an operation of the mind and should be proven and found as a fact and is rarely to be inferred as a matter of law.

*Harris & Harris Constr. Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 118–19, 123 S.E.2d 590, 596 (1962).

30.     Plaintiff makes a compelling argument that Defendant waived its right to recoupment of the expenses.  Defendant does not allege that it paid the expenses "under protest," refused Gross Profit payments that failed to account for the expenses, or otherwise reserved its rights.  Nevertheless, while the evidence developed by the parties in this case may well bear out Plaintiff's defense of waiver, the Court concludes that at this early stage the allegations in the counterclaims do not, as a matter of law, establish an "unconditional" or "insurmountable" equitable waiver defense that warrants dismissal. *Skinner*, 314 N.C. at 270, 333 S.E.2d at 238. Accordingly, the Court concludes that Plaintiff's Motion to Dismiss Defendant's Counterclaim Five for recoupment should be DENIED.

THEREFORE, IT IS ORDERED that Plaintiff's Motion to Dismiss should be GRANTED, in part, and DENIED in part, as follows:

31.     Plaintiff's Motion to Dismiss Defendant's Counterclaim One for accounting is GRANTED.

32.     Plaintiff's Motion to Dismiss Defendant's Counterclaim Two for conversion is DENIED.

33.     Plaintiff's Motion to Dismiss Defendant's Counterclaim Three for unfair and deceptive trade practice is GRANTED.

34.     Plaintiff's Motion to Dismiss Defendant's Counterclaim Four for punitive damages is DENIED.

35.     Plaintiff's Motion to Dismiss Defendant's Counterclaim Five for recoupment is DENIED.

36.     Except as expressly GRANTED above, Plaintiff's Motion to Dismiss is DENIED.

This the 5th day of October, 2016.


      /s/ Gregory P. McGuire
      Gregory P. McGuire
      Special Superior Court Judge
        for Complex Business Cases